UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____ x
In re COMSCORE, INC. SHAREHOLDER    :    Civil Action No. 1:16-cv-09855-JGK
DERIVATIVE LITIGATION                :
                                     :    STIPULATION AND [PROPOSED] ORDER
_____ :    TO SEAL DOCUMENTS CONTAINING
                                     :    CONFIDENTIAL INFORMATION FROM
This Document Relates To:            :    CONFIDENTIAL INFORMATION FROM
                                     :    COURT DOCKET AND FILE
     ALL ACTIONS.                    :    ADDITIONAL DOCUMENTS
_____ x


USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: __2/14/18__

WHEREAS, on February 2, 2018, Plaintiff filed an Unopposed Motion for Preliminary Approval of Derivative Settlement in the above-captioned actions (the "Motion for Preliminary Approval");

WHEREAS, on February 2, 2018, in connection with the Motion for Preliminary Approval, Plaintiff filed the Stipulation of Settlement (Doc. 95) (the "Stipulation"), which includes Exhibits A through D, as well as a Declaration of Daniel J. Morrissey in Support of Derivative Settlement (Doc. 101) (the "Morrissey Declaration");

WHEREAS, comScore has determined that the Corporate Governance Reforms set forth in Exhibit A-1 to the Stipulation (Long-Form Notice, Doc. 95-2), Exhibit D to the Stipulation (Corporate Governance Reforms, Doc. 95-6), and Exhibit 1 to the Morrissey Declaration (Doc. 101-1), contain certain confidential business information, namely certain of comScore's current contractual counterparties;

WHEREAS, as more fully set forth in the annexed declaration of Carol DiBattiste, comScore believes that there is a substantial risk that disclosure of customers identified in the above-referenced documents would impair its current and future business relations with some or all of those customers;

WHEREAS, all parties to the Stipulation have agreed, pursuant to the Stipulation's terms, to amend Exhibit A-1 and Exhibit D to the Stipulation to remove the confidential business information contained therein and maintain that information as confidential (the "Amendment Agreement"), and also to allow comScore to hold an annual meeting of stockholders within three months, rather than two months, following the date it regains compliance with the financial reporting rules and regulations of the SEC;

- 1 -

WHEREAS, all parties now agree that this Amendment Agreement should be filed and considered by the Court in conjunction with the Court's consideration of Plaintiffs' Motion and Unopposed Motion for Preliminary Approval of Derivative Settlement (the "Motion");

WHEREAS, there is a compelling reason to seal Exhibit A-1 (Doc. 95-2), Exhibit D (Doc. 95-6), and Exhibit 1 to the Morrissey Declaration (Doc. 101-1);

WHEREAS, with Court approval, amended versions of Exhibit A-1 to the Stipulation, Exhibit D to the Stipulation, and Exhibit 1 to the Morrisey Declaration will be filed on the docket, and thus sealing the items currently on the docket will not protect more information than is necessary to maintain the confidentiality of the business information at issue;

WHEREAS, the relief is narrowly tailored to protect comScore's business interests.

THEREFORE, IT IS STIPULATED AND AGREED by the parties known to be presently represented, through their respective counsel of record, as follows:

1.      The Clerk of Court will seal Exhibit A-1 (Doc. 95-2), Exhibit D (Doc. 95-6), and Exhibit 1 to the Morrissey Declaration (Doc. 101-1).

2.      comScore will promptly file a copy of the Amendment Agreement attached hereto, and amended versions of Exhibit A-1 and Exhibit D to the Stipulation and of Exhibit 1 to the Morrissey Declaration.

SO ORDERED
DATED: _____ 2/14/18 _____

THE HONORABLE JOHN G. KOELTL
UNITED STATES DISTRICT JUDGE

- 2 -

DATED: February 14, 2018

ROBBINS GELLER RUDMAN
&amp; DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
TRAVIS E. DOWNS III
BENNY C. GOODMAN III
ERIK W. LUEDEKE

Benny C. Goodman III (by
CBENNY C. GOODMAN III

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff Wayne County Employees'
Retirement System

DATED: February 14, 2018

THE ROSEN LAW FIRM, P.A.
PHILLIP KIM
LAURENCE ROSEN
KEVIN CHAN

Phillip Kim (by MDW w/ permission)
PHILLIP KIM

275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone: 212/686-1060
212/202-3827 (fax)

Attorneys for Plaintiff Ron Levy

- 3 -

DATED: February 14, 2018

THE WEISER LAW FIRM, P.C.
ROBERT B. WEISER
BRETT D. STECKER
JAMES M. FICARO

Robert B. Weiser (by MTM w/ express permission)

ROBERT B. WEISER

22 Cassatt Avenue
Berwyn, PA 19312
Telephone: 610/225-2677
610/408-8062 (fax)

Attorneys for Plaintiff Michael C. Donatello

DATED: February 14, 2018

ROBINS ARROYO, LLP
FELIPE J. ARROYO
SHANE P. SANDERS

Felipe J. Arroyo (by MJM express permission)

FELIPE J. ARROYO

600 B Street, Suite 1900
San Diego, CA 92101
Telephone: 619/525-3990

Attorneys for Plaintiff George Assad

DATED: February 14, 2018

THE BROWN LAW FIRM, P.C.
TIMOTHY W. BROWN
MATTHEW LEE

Timothy W. Brown (by MJM express permission)

TIMOTHY W. BROWN

- 4 -

240 Townsend Square
Oyster Bay, NY 11771
Telephone: 516/922-5427
516/344-6204 (fax)

Attorneys for Plaintiff Terry Murphy

DATED: February/__, 2018

JONES DAY
MICHAEL J. MCCONNELL
NINA YADAVA
A. JAMES SPUNG

_____
NINA YADAVA

250 Vesey Street
New York, NY 10281
Telephone: 212/326-3746
212/755-7306 (fax)

Attorneys for Nominal Defendant comScore, Inc.

DATED: February/__, 2018

STEPTOE & JOHNSON LLP
CHRISTOPHER R. CONTE
JENNIFER QUINN-BARABANOV

_____
JENNIFER QUINN-BARABANOV

1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: 202/429-8027
202/429-3902 (fax)

Attorneys for Defendant Serge Matta

DATED: February/__, 2018

WEIL, GOTSHAL & MANGES LLP
IRWIN H. WARREN
DAVID P. BYEFF

- 5 -

_Irwin H. Warren_ (by MJW w/ express
permission)
IRWIN H. WARREN

767 Fifth Avenue
New York, NY 10153
Telephone: 212/310-8000
212/310-8007(fax)

Attorneys for Defendant Patricia A. Gottesman

DATED: February 14, 2018

HOGAN LOVELLS LLP
MICHAEL P. KELLY
DOUGLAS B. PAUL

_Michael P. Kelly_ (by MJM w/ express
permission)
MICHAEL P. KELLY

555 Thirteenth Street, NW
Washington, DC 20004
Telephone: 202/637-5600
202/637-5910 (fax)

Attorneys for Defendant Melvin F. Wesley III

DATED: February 14, 2018

BAKER HOSTETLER
ELIZABETH A. SCULLY

_Elizabeth A. Scully_ (by MJM w/ express
permission)
ELIZABETH A. SCULLY

1050 Connecticut Avenue
Suite 1100
Washington, DC 10036
Telephone: 202/861-1698
202/861-1783 (fax)

Attorney for Defendant Christiana Lin

DATED: February 14, 2018

CALFEE HALTER & GRISWOLD LLP
MITCHELL BLAIR

_Mitchell Blair_ (by MJM w/ express
permission)
MITCHELL BLAIR

- 6 -

1405 East Sixth Street
Cleveland, OH 44114
Telephone: 216/622-8361
216/241-08216 (fax)

CALFEE HALTER & GRISWOLD LLP
DAVID BULES
2800 First Financial Center
255 East Fifth Street
Cincinnati, OH 45202
Telephone: 5 1 3/693-4868
513/842-7028 (fax)

Attorneys for Defendant Joan Lewis

DATED: February 1, 2018                ALSTON & BIRD
                                       JESSICA PERRY CORLEY
                                       LISA R. BUGNI

                                       Jessica Perry Corley (by MJM express permission)
                                       JESSICA PERRY CORLEY

                                       1201 West Peachtree Street
                                       Suite 4900
                                       Atlanta, GA 30309
                                       Telephone: 404/881-4959
                                       404/253-8359 (fax)

                                       Attorneys for Defendants Gian Fulgoni, William
                                       Henderson, Ronald Korn, Russell Fradin, William
                                       Katz, William Engel, Brent Rosenthal, William
                                       Livek, David Chemerow, and Jeffrey Ganek

DATED: February 14, 2018               WILLIAMS & CONNOLLY LLP
                                       JOHN S. WILLIAMS

                                       John S. Williams (by MJM express permission)
                                       JOHN S. WILLIAMS

- 7 -

725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: 202/424-5646
202/434-5029 (fax)

Attorneys for Defendant Magid M. Abraham

DATED: February $\underline{14}$, 2018

SPEARS & IMES LLP
JOANNA C. HENDON
JONATHAN C. FA YER


_Joanna C. Hendon_ (by MJM
_____     rul
            JOANNA C. HENDON    oxpren.
                                 permissim)

51 Madison Avenue
New York, NY 10010
Telephone: 212/213-6553
212/213~0849 (fax)

Attorneys for Defendant Kenneth Tarpey

- 8 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
In re COMSCORE, INC. SHAREHOLDER     :   Civil Action No. 1:16-cv-09855-JGK
DERIVATIVE LITIGATION                :
                                     :   DECLARATION OF CAROL DIBATTISTE
                                     :   IN SUPPORT OF STIPULATION AND
This Document Relates To:            :   [PROPOSED] ORDER TO SEAL
                                     :   DOCUMENTS CONTAINING
ALL ACTIONS.                         :   CONFIDENTIAL INFORMATION FROM
                                     x   COURT DOCKET AND FILE
                                         ADDITIONAL DOCUMENTS

I, Carol DiBattiste, declare as follows:

1.      I am the General Counsel & Chief Compliance, Privacy and People Officer of Nominal Defendant comScore, Inc. ("comScore"). I submit this declaration in support of the Stipulation and Proposed Order to Seal Documents Containing Confidential Information from Court Docket and File Additional Documents (the "Stipulation and Proposed Order"). I have personal knowledge of the facts set forth herein and could and would testify competently thereto.

2.      I have reviewed and am familiar with the terms of the Stipulation and Proposed Order.

3.      The Stipulation and Proposed Order provide that (i) the Clerk of Court will seal Exhibit A-1 (Long-Form Notice, Doc. 95-2), Exhibit D (Corporate Governance Reforms, Doc. 95-6), and Exhibit 1 to the Declaration of Daniel J. Morrissey in Support to the Stipulation of Settlement (Doc. 101-1) from the Court's docket and (ii) file the parties' Stipulation Amendment Agreement attaching amended versions of each of those documents.

4.      There is a substantial risk that disclosure of the customers identified in the above-referenced documents would impair our current and future business relations with some or all of those customers.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

DATED: __2-13-18__

Carol DiBattiste
General Counsel & Chief Compliance, Privacy and People Officer
comScore, Inc.

- 1 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ x | | |
| In re COMSCORE, INC. SHAREHOLDER DERIVATIVE LITIGATION | : : : : | Civil Action No. 1:16-cv-09855-JGK STIPULATION AMENDMENT AGREEMENT |
| This Document Relates To: | : : | |
| ALL ACTIONS. | : : | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ x | | |

1.     This Stipulation Amendment Agreement, dated February 13, 2018, is made and entered into by and among the following Settling Parties (as defined further in ¶IV.1.22 of the Stipulation of Settlement executed on January 31, 2018 (the "Stipulation")): (i) plaintiffs Wayne County Employees' Retirement System ("Wayne County") and Michael C. Donatello ("Donatello") in the action captioned *In re comScore, Inc. Shareholder Derivative Litigation*, No. 1:16-cv-09855-JGK (S.D.N.Y.) (the "Federal Action"); (ii) plaintiffs Terry Murphy ("Murphy") and Ron Levy ("Levy") in the consolidated action captioned *In re comScore, Inc. Virginia Shareholder Derivative Litigation*, No. CL-2016-0009465 (Va. Cir. Ct., Fairfax Cnty.), and plaintiff George Assad ("Assad") in the action captioned *George Assad v. Gian M. Fulgoni, et al.*, No. CL-2017-0005503 (Va. Cir. Ct., Fairfax Cnty.) (collectively, the "State Actions," and together with the Federal Action, the "Actions"); (iii) nominal defendant in the Actions comScore, Inc. ("comScore" or the "Company"); and (iv) defendants Gian M. Fulgoni, William P. Livek, David I. Chemerow, William J. Henderson, William E. Engel, Russell Fradin, Ronald J. Korn, Brent D. Rosenthal, Serge Matta, Magid M. Abraham, Melvin F. Wesley III, Christiana L. Lin, Kenneth J. Tarpey, Patricia A. Gottesman, William Katz, Joan M. Lewis, and Jeffrey Ganek (collectively, the "Individual Defendants," and together with comScore, the "Defendants").

2.     The Settling Parties hereby agree, pursuant to paragraph 7.7 of the Stipulation, to amend Paragraph 1 ("Annual Meeting") of the Corporate Governance Reforms set forth in Exhibit A-1 and Exhibit D to the Stipulation, as that Paragraph 1 now reads in the attached Amended Exhibit A-1 and Amended Exhibit D.

3.     The Settling Parties further hereby agree, pursuant to paragraph 7.7 of the Stipulation, to amend Paragraph (i) of the Related Party Transactions Policy set forth in Exhibit

A-1 and Exhibit D to the Stipulation, as that Paragraph (i) of the Related Party Transactions Policy now read in the attached Amended Exhibit A-1 and Amended Exhibit D.

4. The Settling Parties intend that the Amended Exhibit A-1 and the Amended Exhibit D replace, for all intents and purposes including the provision of Notice as required by paragraph 3.2 of the Stipulation, Exhibit A-1 and Exhibit D as originally attached to the Stipulation.

5. Each counsel executing this Stipulation Amendment Agreement on behalf of any party hereto hereby warrants that he or she has the full authority to do so.

**IN WITNESS WHEREOF**, the parties hereto have caused this Stipulation Amendment

Agreement to be executed, by their duly authorized attorneys, as of February 13, 2018.

ROBBINS GELLER RUDMAN
& DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
TRAVIS E. DOWNS III
BENNY C. GOODMAN III
ERIK W. LUEDEKE

_Benny C. Goodman_ (by MJM of express permission)
BENNY C. GOODMAN III

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff Wayne County
Employees' Retirement System

THE ROSEN LAW FIRM, P.A.
PHILLIP KIM
LAURENCE ROSEN
KEVIN CHAN

_Phillip Kim_ (by MJM by express permission)
PHILLIP KIM

275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone: 212/686-1060
212/202-3827 (fax)

Attorneys for Plaintiff Ron Levy

THE WEISER LAW FIRM, P.C.
ROBERT B. WEISER
BRETT D. STECKER
JAMES M. FICARO

_Robert B. Weiser (by MTM w/ express permission)_

ROBERT B. WEISER

22 Cassatt Avenue
Berwyn, PA 19312
Telephone:  610/225-2677
610/408-8062 (fax)

Attorneys for Plaintiff Michael C.
Donatello

ROBBINS ARROYO, LLP
FELIPE J. ARROYO
SHANE P. SANDERS

_Felipe J. Arroyo (by MTM w/ express permission)_

FELIPE J. ARROYO

600 B Street, Suite 1900
San Diego, CA  92101
Telephone:  619/525-3990

Attorneys for Plaintiff George Assad

THE BROWN LAW FIRM, P.C.
TIMOTHY W. BROWN
MATTHEW LEE

_Timothy W. Brown (by MTM w/ express permission)_

TIMOTHY W. BROWN

240 Townsend Square
Oyster Bay, NY  11771
Telephone:  516/922-5427
516/344-6204 (fax)

Attorneys for Plaintiff Terry Murphy

JONES DAY
MICHAEL J. MCCONNELL
A. JAMES SPUNG

_____
MICHAEL J. MCCONNELL

1420 Peachtree Street, N.E., Suite 800
Atlanta, GA 30309
Telephone: 404/581-3939
404/581-8330 (fax)

Attorneys for Nominal Defendant
comScore, Inc.

STEPTOE & JOHNSON LLP
CHRISTOPHER R. CONTE
JENNIFER QUINN-BARABANOV

_____
JENNIFER QUINN-BARABANOV
(by MJM
w/ express
permission)

1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: 202/429-8027
202/429-3902 (fax)

Attorneys for Defendant Serge Matta

WEIL, GOTSHAL & MANGES LLP
IRWIN H. WARREN
DAVID P. BYEFF

_____
IRWIN H. WARREN
(by MJM
w/ express
permission)

767 Fifth Avenue
New York, NY 10153
Telephone: 212/310-8000
212/310-8007 (fax)

Attorneys for Defendant Patricia A.
Gottesman

HOGAN LOVELLS LLP
MICHAEL P. KELLY
DOUGLAS B. PAUL

_____
MICHAEL P. KELLY

555 Thirteenth Street, NW
Washington, DC 20004
Telephone: 202/637-5600
202/637-5910 (fax)

Attorneys for Defendant Melvin Wesley III

BAKER HOSTETLER
ELIZABETH A. SCULLY

_____
ELIZABETH A. SCULLY

1050 Connecticut Avenue, NW
Suite 1100
Washington, DC 20036
Telephone: 202/861-1698
202/861-1783 (fax)

Attorneys for Defendant Christiana Lin

CALFEE HALTER & GRISWOLD LLP
MITCHELL BLAIR

_Mitchell Blair (by MJM w/ express permission)_
MITCHELL BLAIR

1405 East Sixth Street
Cleveland, OH  44114
Telephone:  216/622-8361
216/241-0816 (fax)

CALFEE HALTER & GRISWOLD LLP
DAVID BULES
2800 First Financial Center
255 East Fifth Street
Cincinnati, OH  45202
Telephone:  513/693-4868
513/842-7028 (fax)

Attorneys for Defendant Joan Lewis

ALSTON & BIRD
JESSICA PERRY CORLEY
LISA R. BUGNI

_Jessica Perry Corley (by MJM w/ express permission)_
JESSICA PERRY CORLEY

1201 West Peachtree Street
Suite 4900
Atlanta, GA  30309
Telephone:  404/881-4959
404/253-8359 (fax)

Attorneys for Defendants Gian Fulgoni,
William Henderson, Ronald Korn, Russell
Fradin, William Katz, William Engel, Brent
Rosenthal, William Livek, David
Chemerow, and Jeffrey Ganek

WILLIAMS & CONNOLLY LLP
JOHN S. WILLIAMS

_John S. Williams (by MJM w/ express permission)_
JOHN S. WILLIAMS

725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: 202/424-5646
202/434-5029 (fax)

Attorneys for Defendant Magid Abraham

SPEARS & IMES LLP
JOANNA C. HENDON
JONATHAN C. FAYER

_Joanna C. Hendon (by MJM w/ express permission)_
JOANNA C. HENDON

51 Madison Avenue
New York, NY 10010
Telephone: 212/213-6553
212/213-0849 (fax)

Attorneys for Defendant Kenneth Tarpey

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ——————————————— x | | |
| In re COMSCORE, INC. SHAREHOLDER DERIVATIVE LITIGATION | : : | Civil Action No. 1:16-cv-09855-JGK |
| ——————————————— | : : | NOTICE OF PROPOSED DERIVATIVE SETTLEMENT |
| This Document Relates To: | : : | AMENDED EXHIBIT A-1 |
| ALL ACTIONS. | : | |
| ——————————————— x | | |

**TO:    ALL RECORD HOLDERS AND BENEFICIAL OWNERS OF THE COMMON STOCK OF COMSCORE, INC. ("COMSCORE" OR THE "COMPANY") AS OF JANUARY 31, 2018 (THE "RECORD DATE")**

**PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. THIS NOTICE RELATES TO A PROPOSED SETTLEMENT AND DISMISSAL OF THE ABOVE-CAPTIONED DERIVATIVE ACTION (THE "FEDERAL ACTION") AND RELATED ACTIONS PENDING IN VIRGINIA CIRCUIT COURT (THE "STATE ACTIONS") AND CONTAINS IMPORTANT INFORMATION REGARDING YOUR RIGHTS. YOUR RIGHTS MAY BE AFFECTED BY THESE LEGAL PROCEEDINGS. IF THE COURT APPROVES THE SETTLEMENT, YOU WILL BE FOREVER BARRED FROM CONTESTING THE APPROVAL OF THE PROPOSED SETTLEMENT AND FROM PURSUING THE RELEASED CLAIMS.**

**IF YOU HOLD COMSCORE COMMON STOCK FOR THE BENEFIT OF ANOTHER, PLEASE PROMPTLY TRANSMIT THIS DOCUMENT TO SUCH BENEFICIAL OWNER.**

**THE COURT HAS MADE NO FINDINGS OR DETERMINATIONS CONCERNING THE MERITS OF THE ACTIONS. THE RECITATION OF THE BACKGROUND AND CIRCUMSTANCES OF THE SETTLEMENT CONTAINED HEREIN DOES NOT CONSTITUTE THE FINDINGS OF THE COURT. IT IS BASED ON REPRESENTATIONS MADE TO THE COURT BY COUNSEL FOR THE PARTIES.**

Notice is hereby provided to you of the proposed settlement (the "Settlement") of the

above-captioned shareholder derivative action (the "Federal Action"), as well as the shareholder

derivative actions in Virginia Circuit Court titled *In re comScore, Inc. Virginia Shareholder

Derivative Litigation*, No. CL-2016-0009465 (Va. Cir. Ct., Fairfax Cnty.), and *George Assad v.

Gian M. Fulgoni, et al.*, No. CL-2017-0005503 (Va. Cir. Ct., Fairfax Cnty.) (together, the "State

Actions"). This Notice is provided pursuant to Order of the United States District Court for the

Southern District of New York (the "Court"). It is not an expression of any opinion by the Court

with respect to the truth of the allegations in the litigation or the merits of the claims or defenses

asserted by or against any party, or as to the merits of the proposed Settlement. It is solely to notify

you of the terms of the proposed Settlement, and your rights related thereto. The Federal Action

and the State Actions are collectively referred to as the "Actions." Capitalized terms not otherwise

- 1 -

defined have the definitions set forth in the written Stipulation of Settlement, dated January 31, 2018 ("Stipulation"). A link to the Form 8-K filed with the Securities and Exchange Commission ("SEC") containing the text of the Stipulation may be found on the "Investor Relations" page of comScore's website, http://www.comScore.com.

## I.    WHY THE COMPANY HAS ISSUED THIS NOTICE

Your rights may be affected by the Settlement of the actions styled *In re comScore, Inc. Shareholder Derivative Litigation*, No. 1:16-cv-09855-JGK (S.D.N.Y.); *In re comScore, Inc. Virginia Shareholder Derivative Litigation*, No. CL-2016-0009465 (Va. Cir. Ct., Fairfax Cnty.); and *George Assad v. Gian M. Fulgoni, et al.*, No. CL-2017-0005503 (Va. Cir. Ct., Fairfax Cnty.) (together, the "Actions"). Federal Plaintiffs Wayne County Employees' Retirement System and Michael C. Donatello (on behalf of themselves and derivatively on behalf of comScore); State Plaintiffs Terry Murphy, Ron Levy, and George Assad (on behalf of themselves and derivatively on behalf of comScore); Individual Defendants Gian M. Fulgoni, William P. Livek, David I. Chemerow, William J. Henderson, William E. Engel, Russell Fradin, Ronald J. Korn, Brent D. Rosenthal, Serge Matta, Magid M. Abraham, Melvin F. Wesley III, Christiana L. Lin, Kenneth J. Tarpey, Patricia A. Gottesman, William Katz, Joan M. Lewis, and Jeffrey Ganek; and Nominal Defendant comScore have agreed upon terms to settle the above-referenced litigation and have signed the Stipulation setting forth those settlement terms.

On _____, 2018, at ___ ___.m., the Court will hold a hearing (the "Settlement Hearing") in the Federal Action. The purpose of the Settlement Hearing is to determine: (i) whether the terms of the Settlement are fair, reasonable and adequate, including the separately negotiated amount for Plaintiffs' Counsel's attorneys' fees and expenses, and should be finally approved; (ii) whether a final judgment should be entered and the Federal Action dismissed with

- 2 -

prejudice pursuant to the Stipulation; and (iii) such other matters as may be necessary or proper under the circumstances.

## II.   SUMMARY OF THE ACTIONS

### A.   The Federal Action

On December 21, 2016, plaintiff Wayne County filed a shareholder derivative complaint in the United States District Court for the Southern District of New York, captioned *Wayne County Employees' Retirement System v. Gian M. Fulgoni, et al.*, No. 1:16-cv-09855. On January 31, 2017, pursuant to stipulation of the parties, the Court extended the time for Defendants to answer, move or otherwise respond to the complaint to March 6, 2017. On February 17, 2017, a similar complaint, *Michael C. Donatello v. Gian M. Fulgoni, et al.*, No. 1:17-cv-01245, was filed in the same Court by plaintiff Donatello.

On March 3, 2017, (i) Wayne County and Donatello filed a stipulation seeking consolidation of their actions and appointment of Lead Counsel; and (ii) the Court stayed Defendants' time to answer, move or otherwise respond to the complaints pending its consideration of the March 3, 2017 stipulation.

On April 24, 2017, a status conference was held before Judge John G. Koeltl. Following the conference, by Order dated April 25, 2017, the *Wayne County* and *Donatello* actions were consolidated for all purposes as *In re comScore, Inc. Shareholder Derivative Litigation*, No. 1:16-cv-09855-JGK (the "Federal Action"). In the same Order, the Court appointed Robbins Geller Rudman & Dowd LLP as Lead Counsel for plaintiffs.

On May 25, 2017, plaintiffs filed their Verified Consolidated Shareholder Derivative Complaint for Breaches of Fiduciary Duty, Corporate Waste, Constructive Fraud, Unjust Enrichment and for Violation of the Federal Securities Laws ("Consolidated Complaint"). The

- 3 -

Consolidated Complaint asserts claims relating to alleged accounting issues associated with nonmonetary barter transactions and allegedly false and misleading statements made in the Company's financial filings with the Securities and Exchange Commission ("SEC") designed to conceal such accounting issues from shareholders, against defendants Gian M. Fulgoni, William J. Henderson, Russell Fradin, Ronald J. Korn, William P. Livek, Brent D. Rosenthal, William E. Engel, David I. Chemerow, Serge Matta, Magid M. Abraham, Jeffery Ganek, William Katz, Joan M. Lewis, Patricia A. Gottesman, Melvin F. Wesley III and Kenneth J. Tarpey.

On June 20, 2017, pursuant to stipulation of the parties, the Court temporarily stayed all proceedings in the Federal Action to allow the parties to explore the potential resolution of the Federal Action through private mediation.

## B.    The State Actions

On May 12, 2016, plaintiff Murphy filed a shareholder derivative complaint on behalf of nominal defendant comScore in Virginia State Court, captioned *Terry Murphy v. Serge Matta, et al.*, No. CL-2016-0006874. On July 6, 2016, plaintiff Levy filed a similar shareholder derivative complaint in Virginia State Court, captioned *Ron Levy v. Serge Matta, et al.*, No. CL-2016-0009465.

On February 7, 2017, Levy filed a motion for leave to file an amended shareholder derivative complaint, to which a proposed amended complaint was attached as an exhibit.

Pursuant to a stipulation of the parties in the *Murphy* and *Levy* actions filed April 7, 2017, on April 13, 2017, the Virginia State Court entered a consent order that, among other things, consolidated the *Murphy* and *Levy* actions under the caption *In re comScore, Inc. Virginia Shareholder Derivative Litigation*, No. CL-2016-0009465 (the "Virginia Action"), appointed The Rosen Law Firm, P.A. and The Brown Law Firm, P.C. as Co-Lead Counsel, and set the deadline

- 4 -

for the defendants in the Virginia Action to respond to the operative complaint as 30 days after notification by Co-Lead Counsel that the 30-day period should begin.

On April 14, 2017, plaintiff Assad also filed a shareholder derivative complaint on behalf of nominal defendant comScore in Virginia State Court, captioned *George Assad v. Gian M. Fulgoni, et al.*, No. CL-2017-0005503 (the "*Assad* Action," and collectively with the Virginia Action, the "State Actions").

On May 19, 2017, the Virginia State Court granted the February 7th motion for leave to file an amended shareholder derivative complaint in the Virginia Action and deemed the Verified Amended Shareholder Derivative Complaint for Breach of Fiduciary Duties, Unjust Enrichment, Abuse of Control, Gross Mismanagement and Waste of Corporate Assets, against defendants Gian M. Fulgoni, William J. Henderson, Russell Fradin, Ronald J. Korn, William P. Livek, Brent D. Rosenthal, William E. Engel, David I. Chemerow, Serge Matta, Magid M. Abraham, William Katz, Joan M. Lewis, Patricia A. Gottesman, Melvin F. Wesley III, Christiana L. Lin, and Kenneth J. Tarpey, the operative complaint in the Virginia Action.

Shortly thereafter, the parties to the State Actions agreed to explore potential resolution of the State Actions, along with the Federal Action, through private mediation.

## C. Settlement Negotiations

On August 18, 2017, representatives for all plaintiffs in the Federal Action and State Actions ("Plaintiffs"), comScore, and the Individual Defendants (collectively, the "Settling Parties") engaged in a formal mediation before the Honorable Layn R. Phillips, United States District Judge (Ret.), in New York, New York. Leading up to the mediation, representatives of comScore and Plaintiffs met and engaged in extensive discussions concerning comScore's corporate governance practices and exchanged proposals related to enhancing those practices, as

- 5 -

1361143_2

well as Plaintiffs' demand that no comScore cash be used to resolve the claims asserted in the parallel securities class action lawsuit pending before the United States District Court for the Southern District of New York titled *Fresno County Employees' Retirement Association, et al. v. comScore, Inc., et al.*, No. 1:16-cv-01820-JGK ("Securities Class Action"). comScore and Plaintiffs also engaged in an information exchange in furtherance of settlement negotiations and, on August 9, 2017, the Settling Parties exchanged comprehensive mediation briefs. Although the Settling Parties failed to reach an agreement to resolve the derivative actions at that mediation session, negotiations thereafter continued under the supervision of Judge Phillips.

During the weeks following that mediation session, representatives for the Settling Parties engaged in conference calls almost daily, often on multiple occasions each day, to further negotiate the terms of a possible settlement. At one point, the parties reached an impasse that nearly derailed the mediation process. However, with the assistance of Judge Phillips, the issue was ultimately resolved and discussions between the Settling Parties continued.

On August 25, 2017, representatives for comScore and the Plaintiffs participated in an in-person meeting in Washington, D.C. to specifically negotiate corporate governance reforms to be implemented as part of a settlement. While progress was made, negotiations over these reforms and other settlement terms continued on numerous lengthy conference calls involving counsel for the Settling Parties and/or Judge Phillips, including during the three weekends immediately following the August 25th meeting.

Ultimately, with the substantial assistance of Judge Phillips, on September 10, 2017, the Settling Parties reached an agreement-in-principle to resolve the Actions. As a result of the Actions and settlement, subject to Court approval, comScore will receive $10 million in cash to be paid by the Individual Defendants' Insurer, and will institute significant corporate governance

- 6 -

reforms that directly address Plaintiffs' allegations and are designed to enhance its internal controls and operations. Plaintiffs and comScore believe that a settlement at this juncture on the terms and on the conditions set forth herein is fair, reasonable, adequate and in the best interests of comScore.

After negotiating the principal terms of the Settlement, counsel for Plaintiffs and comScore, with the assistance of Judge Phillips, separately negotiated the form and amount of attorneys' fees and expenses to be paid to Plaintiffs' Counsel. Based upon the substantial benefits conferred upon comScore, the Company, acting through the Non-Defendant Members of comScore's Board, agreed to pay Plaintiffs' Counsel comScore common stock shares valued at $8 million as their attorneys' fees and expenses ("Fee Award").

Following the agreement-in-principle to resolve the Actions, the parties made appropriate filings to stay all proceedings in each of the Actions, including (a) a Stipulation and Order entered on September 21, 2017, in the Federal Action staying all proceedings pending the submission of the Settlement for the Court's approval; and (b) an Agreed Order entered by the Virginia State Court on September 26, 2017, staying all proceedings in the State Actions.

## D.  Approval of the Settlement by the Majority of Non-Defendant Members of comScore's Board of Directors

On January 25, 2018, the majority of the Non-Defendant Members of comScore's Board, in exercising their business judgment, approved the Settlement and each of its terms, including the cash payment, corporate governance reforms, releases and the separately negotiated attorneys' fees and expenses, as set forth in the Stipulation, as in the best interest of comScore and its shareholders.

## III.  TERMS OF THE PROPOSED DERIVATIVE SETTLEMENT

The principal terms, conditions and other matters that are part of the Settlement, which is subject to approval by the Court, are summarized below. This summary should be read in

- 7 -

conjunction with, and is qualified in its entirety by reference to, the text of the Stipulation, which has been filed with the Court and is available at _____.

In connection with the Settlement of the Actions, comScore shall be paid $10,000,000 in cash (the "Cash Payment") by the Individual Defendants' Insurer. Additionally, the comScore Board shall adopt the Corporate Governance Reforms specified below within thirty (30) calendar days after the District Court Approval Order for the Settlement is entered by the Court.

comScore, by and through the Non-Defendant Members of comScore's Board, acknowledges and agrees that the Cash Payment, together with the Corporate Governance Reforms, confer substantial benefits upon comScore and its shareholders. comScore also acknowledges and agrees that Plaintiffs' commencement, prosecution, and settlement of the Actions were precipitating and material factors in the Company's recovery of the Cash Payment and the adoption of the Corporate Governance Reforms set forth immediately below.

## CORPORATE GOVERNANCE REFORMS

### 1. Annual Meeting

The Company shall use all commercially reasonable efforts to call and hold an annual meeting of stockholders as soon as practicable, in accordance with the rules and regulations of the SEC, and in no event later than the earlier of: (i) three months following the date it regains compliance with the financial reporting rules and regulations of the SEC; or (ii) June 30, 2018, provided, however, that if the Company is not in compliance with these financial reporting rules and regulations of the SEC by May 1, 2018, the Company agrees to seek an exemption pursuant to the guidance set forth in 13 C.F.R. Part 200, Release No. 34-57262 to hold the annual meeting notwithstanding its lack of compliance with these rules and regulations. In the event the exemption is granted, the Company will hold an annual meeting two months following its receipt of the

- 8 -

exemption from the SEC.  If it is denied, the Company will hold the meeting within two months after it regains such compliance.

### 2.      Board Diversity

The Board shall adopt, and shall adhere to, a policy that promotes appropriate diversity among the members nominated for election to the board, taking into account such attributes that include gender, ethnicity and race, as are considered appropriate for good governance from time to time, including guidelines promoted by Institutional Shareholder Services Inc.  In developing this policy, the Nominating & Corporate Governance Committee shall evaluate the adoption of the "Rooney Rule" or similar provision and report its findings and conclusions to the Board of Directors by December 31, 2019.

### 3.      Internal Controls and Procedures

In the first Annual Report on Form 10- K filed with the SEC by the Company after the date of this settlement agreement, the Company shall disclose (a) its findings and conclusions regarding the effectiveness of its disclosure controls and procedures and internal control over financial reporting, (b) the material weaknesses in such internal controls that have been identified, and (c) the material changes or remediation actions that have been taken or that have been adopted and are in the process of being implemented with respect to such weaknesses, all in accordance with applicable accounting standards, SEC rules and regulations, and other applicable requirements.

### 4.      Enhanced Risk Oversight of the Company

The Company shall create a Compliance Coordinating Committee ("CCC") and amend the Audit Committee Charter appropriately in order to enhance the risk oversight responsibilities of the Audit Committee to enable the Audit Committee to effectively monitor the Company's compliance with public reporting requirements as well as internal risk assessment and internal

- 9 -

reporting, and provide oversight of the Company's compliance with applicable laws and regulations, including those relating to public disclosures about the Company's business affairs, financial reporting and risk exposure. In addition, the Company shall maintain a designated Chief Compliance Officer (currently, Carol DiBattiste, Esq.) who shall be responsible for developing (with such independent outside advisors as necessary or appropriate) and implementing the Company's risk management and compliance programs and activities. The Chief Compliance Officer shall chair the Company's CCC, shall ensure that the Company's risk management and corporate compliance programs are reviewed and evaluated for effectiveness, and shall oversee the implementation of appropriate modifications and enhancements.

The CCC shall implement and oversee a compliance management system designed to ensure that all employees of comScore understand the importance of legal and regulatory compliance, including financial compliance. The CCC shall be chaired by the Chief Compliance Officer, report to the Company's Audit Committee through the Chief Compliance Officer, and meet on at least a quarterly basis. The CCC shall consist of comScore's Chief Executive Officer ("CEO"), Chief Financial Officer ("CFO"), Chief Operating Officer ("COO"), Chief Technology Officer, Chief Revenue Officer, Chief Accounting Officer, VP of Internal Audit and other executives, as necessary or appropriate. The responsibilities and duties of the CCC shall include, among other things, the following:

(a) Undertaking appropriate tasks assigned by the Board, Audit Committee, CEO or the Chief Compliance Officer;

(b) Accepting and approving compliance-related policies and procedures;

(c) Providing regulatory guidance to the Board through the Chief Compliance Officer or Vice President, Internal Audit;

- 10 -

(d)     Monitoring key areas of compliance and relevant trends, and identifying, assessing and managing risk exposures of the Company, including the risks represented by failing to recognize the proper accounting treatment of nonmonetary transactions, the dissemination of false or misleading public statements by management, and the failure of management to timely disclose material information to the public.

The Audit Committee shall meet at least quarterly to review and assess the Company's risk compliance measures, and shall receive reports, at least quarterly, from the Company's Chief Compliance Officer. The Audit Committee shall report in to the full Board at least quarterly with respect to any material risks identified regarding comScore's legal and regulatory compliance, and shall include specific recommendations regarding proposals for mitigating such risks, as well as relevant considerations relating to any necessary or appropriate disclosure by comScore of such risks. The Audit Committee shall conduct annual evaluations of the Chief Compliance Officer's performance and effectiveness. The Audit Committee shall also report to the Compensation Committee on an annual basis regarding the CEO's and CFO's contribution to comScore's culture of ethics and compliance and their effectiveness and dedication to ensuring the Company's compliance with applicable laws, rules, and regulations.

## 5.     Creation of Chief Compliance Officer Position

The Board shall maintain the designated position of Chief Compliance Officer, who shall report directly to the Chief Executive Officer and the Chairman of the Audit Committee. The duties of the Chief Compliance Officer shall include, but not be limited to, oversight and administration of comScore's compliance program, including corporate governance and compliance policies (including the Code of Business Conduct and Ethics), chairing the CCC,

- 11 -

fostering a culture that integrates compliance and ethics into business processes and practices through educational   awareness and training, and maintaining accurate public and internal disclosures and reporting and investigating potential compliance and ethics concerns. The Chief Compliance Officer shall provide a formal report to the Audit Committee at least quarterly, and shall report promptly to that Committee any allegations of such lack of compliance or ethics concerns relating to financial fraud or reporting violations by corporate officers and/or directors. In the event of a finding by such officers or directors of a violation of SEC regulations, laws, or the Code of Business Conduct and Ethics, the Chief Compliance Officer shall report the violation in writing to the full Board. The Chief Compliance Officer shall provide a written annual report to the Audit Committee that outlines the Company's compliance with applicable laws and regulations, including those relating to public disclosures about the Company's business affairs, financial reporting and risk exposure, and that identifies any reporting violations by corporate officers and/or directors.

comScore's Chief Compliance Officer shall be primarily responsible for developing, implementing and managing comScore's ethics and compliance program and for assisting the Board in fulfilling its oversight duties with regard to comScore's compliance with applicable laws, regulations and accounting standards, and the dissemination of true and accurate information. In this regard, the Chief Compliance Officer shall report to the Audit Committee of the Board, and work with other Board committees as necessary, to facilitate the Board's oversight responsibilities. The person who holds the Chief Compliance Officer position shall have appropriate executive-level experience in risk mitigation, legal-regulatory compliance and public disclosures. The responsibilities and duties of comScore's Chief Compliance Officer shall include the following:

- 12 -

(a)     Working with the Audit Committee to evaluate and define the goals of comScore's ethics and compliance program in light of trends and changes in laws which may affect comScore's compliance with laws relating to disclosure of the Company's risk exposure;

(b)     Managing and overseeing comScore's ethics and compliance program, including creation of a policy and procedures library, education and training on the compliance program and key policies, implementing procedures for monitoring and evaluating the program's performance, and communicating with and informing the Board regarding progress towards meeting program goals;

(c)     Advising comScore's Audit Committee and acting as the liaison between the executive officers, the Audit Committee and the full Board, in which capacity the Chief Compliance Officer shall: (i) be primarily responsible for assessing organizational risk for misconduct and noncompliance with applicable laws and regulations; (ii) report material risks relating to compliance or disclosure issues to the Audit Committee within 5 business days of identification of those risks; and (iii)make written recommendations for further evaluation and/or remedial action within deadlines established by the Audit Committee;

(d)     Preparing annual written reports to the Audit Committee and oral quarterly briefings assessing compliance and, where necessary, recommending remedial action, and reporting on an annual basis to the Audit Committee

- 13 -

regarding the CEO's and CFO's contributions to comScore's culture of ethics and compliance;

(e) On an as-needed basis, employing an independent third-party consultant and/or service to assist in the assessment of internal risk;

(f) Working with the VP of Internal Audit and the Audit Committee to ensure that the Company maintains an appropriate level of staffing and expertise within the Internal Audit department, to evaluate the adequacy of comScore's internal controls relating to compliance, and to develop proposals for improving those controls and the internal audit process. This includes meeting with the Audit Committee at least quarterly to discuss ongoing and potential litigation and compliance issues;

(g) Overseeing and reviewing comScore's marketing materials including, without limitation, postings on comScore's website, to ensure that they report accurate and current information; and

(h) Performing an independent review of comScore's draft quarterly and annual reports filed with the SEC on Forms 10-Q and 10-K, and related materials prior to their publication to provide oversight regarding (i) the accuracy, completeness and timeliness of disclosures relating to risk exposure from the Company's recognition of nonmonetary transactions, general accounting shortfalls and weak internal controls, (ii) the identification and disclosures of any material risk to comScore's compliance with applicable laws and regulations, and (iii) accurate reporting of any material issues that may merit disclosure to comScore's Audit Committee;

- 14 -

(i)     Reviewing and approving comScore's press releases related to financial information reports and results, and related materials prior to their publication to provide oversight regarding the accuracy, completeness, and timeliness of disclosures relating to accounting matters, and any material risks to comScore's compliance with applicable laws and regulations, and reporting any material issues that may merit disclosure to comScore's Audit Committee; and

(j)     Implementing and overseeing employee training in risk assessment and compliance.

## 6.     Improvements to the Audit Committee

The Board shall adopt an updated Charter of the Audit Committee that includes provisions, or shall otherwise provide, that:

(a)     The Audit Committee shall obtain input from management representatives as necessary to review the accuracy of public disclosures, including, with respect to: (i) accounting policies, including the recognition and calculation of any nonmonetary transactions; (ii) operations, enterprise risks, and compliance matters that may have a material impact on the Company's operational performance, financial health, balance of risk, stability, and liquidity, and (iii) any other material matters required to be disclosed under state and federal securities laws and regulations;

(b)     All Company employees shall be required to cooperate with Audit Committee investigations, including, but not limited to, producing all requested documents and participating in interviews.    Any failure to

- 15 -

cooperate shall be grounds for discipline by the Board, including, but not limited to, termination for cause, in the sole discretion of the Board. This applies to all Company employees, including, but not limited to, the CEO and CFO;

(c)     In its oversight capacity, the Audit Committee shall have the responsibility to ensure that the Company (*i.e.*, management) implements and maintains internal controls over accounting and financial reporting and reporting systems and procedures designed to identify instances of fraud and to ensure the integrity, accuracy, completeness, and timeliness of the Company's financial statements and related public filings and disclosures;

(d)     The Audit Committee shall receive quarterly reports from the Company's Chief Compliance Officer in order to assist the Audit Committee with its oversight responsibilities, including monitoring the Company's compliance with public reporting requirements as well as internal risk assessment and internal reporting, and its oversight of the Company's compliance with applicable laws and regulations, including those relating to public disclosures about the Company's business affairs, financial reporting and risk exposure;

(e)     The Audit Committee shall receive annually a report listing all trades in comScore securities engaged in by Section 16 officers;

(f)     At least annually, the Committee shall: (i) evaluate the qualifications, performance and independence of the Company's independent auditors, including an evaluation of the lead audit partner; (ii) assure the regular

- 16 -

1361143_2

rotation of the lead audit partner at the Company's independent auditors; and (iii) consider regular rotation of the accounting firm serving as the Company's independent auditors. The Audit Committee shall actively engage in a dialogue with the auditors with respect to any disclosed relationship or services that may impact the objectivity and independence of the auditors and should take, or recommend that the Board take, appropriate action to oversee the independence of the auditor;

(g)     The Audit Committee shall also report to the Compensation Committee on an annual basis regarding the CEO's and CFO's contribution to comScore's culture of ethics and compliance and their effectiveness and dedication to ensuring the Company's compliance with applicable laws, rules, and regulations; and

(h)     The Company shall post the amended Charter of the Audit Committee on its website.

## 7.     Nominating & Corporate Governance Committee

The Board shall adopt an updated Charter of the Nominating & Corporate Governance Committee that includes the following provisions:

(a)     The Committee shall consist of at least three members, which members shall be appointed no later than six months after the final approval of the settlement in all of the Actions;

(b)     The requirement that, on at least an annual basis and periodically as necessary, the Committee review and make recommendations to the Board regarding the skills, qualifications and experience required of directors and

- 17 -

candidates to become directors. The Committee's recommended qualifications should emphasize a candidate's judgment, skill, integrity, experience with businesses and other organizations of comparable size or industry, the interplay of the candidate's experience with the experience of other directors, the extent to which the candidate would be a desirable addition to the Board and any committees of the Board and any other factors that the Committee deems relevant to the current needs of the Board, including those that promote diversity;

(c) The Committee shall identify, screen and interview in person (or by appropriate video or teleconferencing technology) individuals qualified to become directors, consistent with criteria approved by the Board, and in consultation with independent corporate governance advisors to the extent appropriate. The Committee shall consider any director candidates recommended by the Company's stockholders pursuant to the procedures set forth in the Company's Bylaws and described in the Company's proxy statement from time to time. The Committee shall also evaluate incumbent directors who are expected to stand for reelection upon the expiration of each director's term, and final approval of any director candidate shall be determined by the full Board; and

(d) the Company shall post the amended Committee Charter, as well as the Company's Corporate Governance Guidelines, on its website.

- 18 -

## 8.     Related Party Transactions Policy

The Board shall adopt the Related Party Transactions Policy, to become effective no later than March 31, 2018.  The Company shall make such policy available to the public and all employees, including by posting it on the Company's internal website.

**Policy**

(a)     The Board recognizes that certain transactions present a heightened risk of conflicts of interest or the perception thereof.  The Board has determined that the Audit Committee of the Board (the "Committee") is best suited to review all Related Party Transactions, which are limited to those described in this Policy, and that such transactions shall be subject to the approval or ratification by the Committee in accordance with this Policy and the Committee's charter.

**Definition**

(b)     A "Related Party Transaction" is any transaction directly or indirectly involving any Related Party that would need to be disclosed under Item 404(a) of the SEC's Regulation S-K.  Under Item 404(a), the Company is required to disclose any transaction occurring since the beginning of the registrant's last completed fiscal year, or any currently proposed transaction, involving the Company where the amount involved exceeds $120,000, and in which any Related Party had or will have a direct or indirect material interest.  "Related Party Transaction" also includes any material amendment or modification to an existing Related Party Transaction.

"Related Party" means any of the following:

- a director (which term when used herein includes any director nominee),
- an executive officer (which term when used herein includes any member of "management" as defined by ASC 850),

- 19 -

- a person known by the Company to be a shareholder who owns any securities with respect to which he or she, directly or indirectly, has sole or shared (i) voting power and/or (ii) investment power, in excess of 5% of any class of the Company's securities, or

- a person known by the Company to be an immediate family member of any of the foregoing.

"Immediate family member" means a child, stepchild, parent, stepparent, spouse, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law of such director, executive officer, nominee for director or beneficial owner; any other family member who exercises control or significant influence over, or who might be controlled or significantly influenced by, such director, executive officer, nominee for director or beneficial owner because of the family relationship; and any person (other than a tenant or employee) sharing the household of such director, executive officer, nominee for director or beneficial owner.

**Approval Procedures**

(c)     Prior to entering into a Related Party Transaction, the Committee shall review the material facts of the Related Party Transaction and either approve or disapprove of the entry into the Related Party Transaction, subject to the exceptions described below. If advance Committee approval of a Related Party Transaction is not feasible, then the Related Party Transaction shall be considered and ratified (if the Committee determines it to be appropriate) at the Committee's next regularly scheduled meeting. In determining whether to approve or ratify a Related Party Transaction, the Committee will take into account factors it deems appropriate, including, but not limited to:

- the Related Party's direct or indirect interest in the Related Party Transaction;

- 20 -

- the approximate dollar value of the amount involved in the Related Party Transaction;

- the approximate dollar value of the amount of the Related Party's direct or indirect interest in the transaction without regard to the amount of any profit or loss;

- whether the transaction was undertaken in the ordinary course of business of the Company;

- whether the transaction with the Related Party is proposed to be, or was entered into on terms no less favorable to the Company than terms that could have been reached with an unrelated third party;

- whether any alternative transactions or sources for comparable services or products are available;

- the purpose of, and the potential benefits, or potential risks or costs, to the Company of, the Related Party Transaction;

- whether the Related Party Transaction is in the best interests of the Company;

- required public disclosure, if any;

- whether the Related Party Transaction presents an improper conflict of interest for any comScore officer or director;

- the impact on a director's independence in the event the Related Party is a director, an immediate family member of a director or an entity in which a director is a partner, shareholder or executive officer; and

- any other information regarding the Related Party Transaction or the Related Party in the context of the proposed transaction that would be material to investors in light of the circumstances of the particular transaction.

- 21 -

(d)     The Committee has reviewed the Related Party Transactions described below and determined that each of the Related Party Transactions described therein shall be deemed to be pre-approved or ratified (as applicable) by the Committee under the terms of this Policy.  In connection with each regularly scheduled meeting of the Committee, a summary of each new Related Party Transaction deemed pre-approved as described below shall be provided to the Committee for its review.

(e)     No director shall participate in any discussion or approval of a Related Party Transaction for which he or she is a Related Party, except that the director shall provide all material information concerning the Related Party Transaction to the Committee.

(f)     Approval of a Related Party Transaction shall be obtained through approval by a majority of the Audit Committee's members, none of whom is a Related Party in regard to the Related Party Transaction under consideration, with respect to the Related Party Transaction under consideration, except that, if the transaction with the Related Party is proposed to be, or was, entered into on terms less favorable to the Company than terms that could have been reached with an unrelated third party, approval of the Related Party Transaction shall be obtained by unanimous approval of the disinterested members of the Board.

(g)     A Related Party Transaction shall not be approved if such Related Party Transaction (i) would render a director no longer independent and (ii) would cause less than a majority of the Board to meet the Company's director independence  requirements.

(h)     If a Related Party Transaction will be ongoing, the Committee may establish guidelines for the Company's management team to follow in its ongoing dealings with the Related Party. Thereafter, the Committee, on at least an annual basis, should review and assess ongoing relationships with the Related Party to confirm that they are in compliance with the Committee's

- 22 -

guidelines and that the Related Party Transaction remains appropriate. In addition, the Committee should review and assess, on at least a quarterly basis, any transactions that require disclosure under ASC 850 but that do not constitute Related-Party Transactions under this Policy.

### Standing Pre-Approval for Certain Related Party Transactions

(i)     The Committee has reviewed the types of Related Party Transactions described below and determined that each of the following shall be deemed to be pre-approved by the Committee, even if the aggregate amount involved will exceed $120,000, unless otherwise specifically determined by the Committee.

- **Employment of executive officers**.  Any employment by the Company of an executive officer of the Company or any of its subsidiaries if the related compensation is approved (or recommended to the Board of Directors for approval) by the Company's Compensation Committee;

- **Director compensation**.  Any compensation paid to a director for service as a director if such compensation is approved (or recommended to the Board of Directors for approval) by the Company's Compensation Committee;

- **Certain transactions with other companies**.  Any transaction with another company at which a Related Party's only relationship is as an employee (other than an executive officer or director) or beneficial owner of less than five percent of that company's equity securities;

- **Substantially comparable transactions with the same party**.  Any transaction substantially comparable to a previously Committee-approved transaction with the same party entered in the ordinary course of business, on terms no less favorable to the Company than terms that could have been reached with an unrelated third party

- 23 -

1361143_2

on a negotiated, arm's-length basis, *provided* that any transactions with Exempt Companies (defined below) shall require approval. Simultaneously with the execution of this provision, the Settling Parties (as defined in the Stipulation of Settlement) are executing a Confidential Agreement identifying the Exempt Companies for which approval shall be required. The Confidential Agreement will not be filed with the Court unless and until a dispute arises between the Settling Parties with respect to its terms or application. In that event, the Settling Parties will request that the Confidential Agreement be filed with and maintained by the Court under seal. If required by the Court, the Confidential Agreement or any of its terms may be disclosed to the Court *in camera*, but this disclosure must be carried out to the fullest extent possible in accordance with the practices of the Court so as to preserve the confidentiality of the Confidential Agreement, particularly the identities of the Exempt Companies;

- **Transactions where all shareholders receive proportional benefits.** Any transactions, arrangements or relationships where the Related Party's interest arises solely from the ownership of the Company's common stock and all holders of the Company's common stock received the same benefit on a pro rata basis (*e.g.*, dividends or stock splits);

- **Regulated transactions.** Any transactions, arrangements or relationships with a Related Party involving the rendering of services as a common or contract carrier, or public utility, at rates or charges fixed in conformity with law or governmental authority; and

- 24 -

- **Certain banking-related services.** Any transactions, arrangements or relationships with a Related Party involving services as a bank depositary of funds, transfer agent, registrar, trustee under a trust indenture, or similar services.

(j)     A Related Party Transaction entered into without pre-approval of the Committee shall not be deemed to violate this Policy, or be invalid or unenforceable, so long as the transaction is brought to the Committee and ratified as promptly as reasonably practical after it is entered into or after it becomes reasonably apparent that the transaction is covered by this policy. To the extent that the Committee does not ratify or approve such transaction, the transaction shall be rescinded as soon as reasonably practicable. Any Related Party Transactions that are not entered in accordance with this Policy and for which the Committee later fails to ratify or rescind shall be publicly disclosed to stockholders in its next periodic report filed with the Securities and Exchange Commission.

(k)     All Board members shall submit to the General Counsel an up-to-date list of companies in which they are a director, an officer, and/or of which they own a controlling interest, and to promptly update the list when any changes occur.

## 9.     Board Composition and Practices

The Board shall adopt Corporate Governance Guidelines that include, or otherwise adopt and implement, the following provisions:

- Specify that the roles of Chairman of the Board and CEO should generally not be held by the same individual, but that if those positions are combined, or if the Chairman is not an "independent" director, then the independent members of the Board shall select one independent director to serve as the Lead Independent Director, who shall act as liaison with the Chairman and shall be given specific

- 25 -

duties, including approving agendas for meetings, meeting schedules, calling meetings of the independent directors, guiding Board evaluations, guiding Board considerations of CEO compensation, and guiding the CEO succession planning process;

• Directors of the Company who simultaneously serve as executive officers of the Company may not serve on the board of directors of more than one other public company, and other directors may not serve on the boards of more than three other public companies, in each case unless approved by the Board;

• The Board's standing committees shall have standing authorization, at their discretion, to engage legal counsel or other advisors of their choice, who shall report directly to the Board or such committee; and

• The Nominating & Corporate Governance Committee, in coordination with the Chief Compliance Officer and General Counsel, shall develop and implement ongoing annual director education programs for the members of the Board, which shall include provisions for the Chairman of the Board and the chairs of each standing committee of the Board to attend, at least once every three years, a director education program sponsored by the Stanford Law School Directors College, the Vanderbilt Directors College, the National Association of Corporate Directors or similar programs.

**10.    Clawback Policy**

To the extent permitted by law, if the Board, or a committee thereof, determines that any bonus, incentive payment, equity award or other compensation has been awarded or received by an executive officer of the Company, and that such compensation was based on any financial

- 26 -

1361143_2

results or operating metrics that were satisfied as a result of such officer's knowing or intentional fraudulent or illegal conduct, then the Board, or such committee thereof, shall take appropriate actions to recover from the officer such compensation (in whole or in part). Further, in the event of a restatement of the Company's financial statements (other than due to a change in accounting policies or principles), the Company shall seek to recover any compensation received by the CEO and CFO that is required to be recovered under Section 304 of Sarbanes-Oxley Act of 2002. In the event of any such clawback, the Company shall, to the extent permitted, publicly disclose the amounts and circumstances in its next annual meeting proxy statement or other filing with the SEC.

## 11.    Compensation Committee

The Board shall adopt an updated Charter of the Compensation Committee, which shall include the following provisions:

- (a)    the Compensation Committee shall consist of at least three members, which members shall be appointed no later than six months after the final approval of the settlement in all of the Actions;

- (b)    in considering any compensation or severance arrangements or plans with executive officers, the Compensation Committee shall consider, among other factors in evaluating the particular officer's performance, his/her compliance with legal and regulatory requirements and internal policies and procedures, and in any severance arrangements, the circumstances surrounding such officer's departure; and

- (c)    the Company shall post the amended Compensation Committee Charter on its website.

- 27 -

**12.    Ban on Certain Stock Repurchases**

The Board shall prohibit the Company from repurchasing Company stock from executive officers other than in accordance with applicable rules and regulations of the SEC.

**13.    SEC Filings**

The Company shall devote necessary and appropriate resources, including its principal financial officer and principal accounting officer, Audit Committee, and independent public accountants, to complete the pending restatements and regain compliance with the Company's periodic reporting requirements under the rules and regulations of the SEC, as soon as practicable. Going forward, the Company shall carefully consider and assess Company policies and procedures in order to enable the Company to be as transparent as possible in its public disclosures and to avoid untimely filings in the future.

**14.    Amendments to Company Separation Agreements**

The Company, working through the Compensation Committee, shall amend its form of Change of Control and Severance Agreement (the "COCS Agreement") for all agreements entered into after January 31, 2018, to prohibit a finding of termination for "Good Reason" where (i) the executive's conduct is such that his or her compensation is subject to clawback provisions under any policy or agreement of the Company, or pursuant to applicable law, statute, rule or regulation of any branch of the federal government or (ii) where either of the events described in Sections 6(e)(i) and (ii) of the COCS Agreement is caused by the intentional or reckless conduct of the executive himself/herself.

**15.    Attendance at Annual Meetings of Stockholders**

Absent extraordinary circumstances, each member of the Board shall be expected to attend each annual stockholders' meeting in person, and at such meeting stockholders shall have the right

- 28 -

to ask questions, both orally and in writing, and receive answers from and engage in discussion with the CEO and members of the Board.

## 16. Ban on Stock Pledges/Hedging

The Board shall adopt a policy on stock hedging and/or pledging that prohibits a director from hedging and/or pledging any of the equity securities of the Company in a margin or similar loan transaction and shall include disclosure of such policy on the Company's website.

## 17. Stock Ownership Guidelines

The Board shall adopt a policy regarding stock ownership guidelines for the CEO, CFO, COO and such other executive officers as the Board shall determine, which shall provide:

- that such officer shall be required to maintain minimum stockholdings, (including restricted shares, restricted stock units and shares underlying options) up until his/her employment by the Company ends, equal to at least: (i) CEO - 5 times base salary, (ii) CFO - 3 times base salary, and (iii) COO and other officers - 2 times base salary;

- the time period for compliance shall be 5 years after the later of adoption of the policy or the date of assuming such officer position; and

- the Company shall disclose in its annual proxy statement when an individual falls out of compliance or regains compliance.

## 18. Policy on Lobbying and Political Contributions

The Board shall adopt a policy that limits the use of corporate funds and other assets for governmental lobbying and political campaigns as follows:

- 29 -

The Nominating and Corporate Governance Committee shall have oversight over lobbying and political activities conducted by the Company, and any such activities shall be conducted for the purpose of promoting the commercial interests of the Company as a whole, be in furtherance of the interests of its stockholders, and be in compliance with applicable laws, rules and regulations as in effect from time to time. Any such activities shall not be intended to promote narrow political preferences of the Company's executives that have little or no bearing on the Company's own commercial performance or activities.

To ensure that any political activities by comScore are transparent to comScore shareholders, the Company shall post to its website, and update, on a quarterly basis, contributions made by the Company, any federal political action committee established by the Company, and by any state or local political action committees established by the Company, including recipient's name and amounts given.

## 19.    Whistleblowers

The Board shall review the Reporting and Non-Retaliation Policy, most recently updated in April 2017, on an annual basis and ensure the Company provides annual training of employees with respect to such policy. The Company shall maintain a written policy that enables interested parties to report ethical or legal violations, and protects such parties from retaliation, and shall post such policy, as in effect from time to time, on the Company's internal website for employees. The policy shall include provisions that:

> (a)     encourage interested parties to bring forward appropriate ethical and legal violations, and/or a reasonable belief that such violations have occurred, to the Audit Committee and the Chief Compliance Officer so that action may

- 30 -

be taken   to resolve the issue, and who will handle the complaints anonymously and in confidence to the extent permitted by applicable law;

(b)     communicate that the Company is serious about adherence to its conduct and compliance procedures;

(c)     if a party brings his or her complaint to an outside regulator or other governmental entity, he or she will be protected under the terms of the policy as if the complaint was directed to the Audit Committee Chair and/or Chief Compliance Officer;

(d)     disclose that individuals are subject to criminal penalties, including imprisonment, for retaliation against whistleblowers;

(e)     specify that it is both illegal and against the Company's policy to discharge, demote, suspend, threaten, intimidate, harass or in any manner retaliate against whistleblowers; and

(f)     specify that the Company shall remind employees of the whistleblower provisions and protections in employee communications provided at least annually and through the Company's internal website.

## 20.    Executive Reports

At regularly scheduled quarterly Board meetings, the principal executive officer, principal financial officer and any other executive officer who oversees a principal business unit or function within the Company, shall report to, or otherwise be available to update, the Board on material developments in their respective areas of responsibility, including, but not limited to, identifying risks represented by failing to recognize the proper accounting treatment of nonmonetary transactions, the dissemination of false and misleading public statements by management, or the

- 31 -

1361143_2

failure of management to timely disclose material information to the public. These reporting officers shall be available to meet with non-employee directors of the Company from time to time.

\* \* \* \* \*

In addition to the Cash Payment and the Corporate Governance Reforms set forth above, the Stipulation provides for the entry of judgment dismissing the Federal Action with prejudice, entry of judgment dismissing the State Actions with prejudice, and, as explained in further detail in the Stipulation, releasing the Released Claims (A) by comScore, comScore's shareholders, and the Plaintiffs against the Released Persons, or (B) by or on behalf of the Released Persons against the Plaintiffs, Plaintiffs' Counsel, comScore, and all current comScore shareholders in their capacities as comScore shareholders. The Stipulation further provides that these releases will become effective upon the first date on which each of several conditions, including the entry of judgment dismissing the Federal Action and State Actions referenced above, has occurred. Please refer to the Stipulation for a full description of the terms of the Settlement, including a full description of the terms summarized in this paragraph.

## IV. PLAINTIFFS' COUNSEL'S SEPARATELY NEGOTIATED ATTORNEYS' FEES AND EXPENSES

After negotiating the principal terms of the Settlement, counsel for Plaintiffs and comScore, with the assistance of Judge Phillips, separately negotiated the form and amount of attorneys' fees and expenses to be paid to Plaintiffs' Counsel. Based upon the substantial benefits conferred upon comScore, the Company, acting through the Non-Defendant Members of comScore's Board, agreed to pay Plaintiffs' Counsel comScore common stock shares valued at $8 million as their attorneys' fees and expenses ("Settlement Shares"), subject to Court approval. Within ten (10) business days following the entry of the Judgment and District Court Approval Order, comScore shall issue and deliver the Settlement Shares to Robbins Geller Rudman & Dowd

- 32 -

1361143_2

LLP, notwithstanding the existence of any timely filed objections thereto, appeals therefrom, or potential for appeal therefrom, or collateral attack on the Settlement, or any part thereof, subject to Plaintiffs' Counsel's several obligations, as provided in the Stipulation, to make appropriate refunds, or repayments, or return of shares as a result of any appeal and/or further proceedings on remand, or successful collateral attack. Notwithstanding the prior sentence, in no event shall the 10-day period in which comScore shall issue and deliver the Settlement Shares begin until the Court approves the Fee Award.

The Fee Award includes fees and expenses incurred by Plaintiffs' Counsel in connection with the prosecution and settlement of the Actions. To date, Plaintiffs' Counsel have not received any payments for their efforts on behalf of the Company and comScore shareholders. The Fee Award, if approved, will compensate Plaintiffs' Counsel for the substantial benefits comScore and Plaintiffs' Counsel believe were achieved in the litigation.

## V.   THE SETTLING PARTIES' REASONS FOR THE SETTLEMENT

The Settling Parties have determined that it is desirable and beneficial that the Actions, and all of their disputes related thereto, be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation, and Plaintiffs' Counsel believe that the Settlement is in the best interests comScore and its shareholders.

### A.   Why Did the Defendants Agree to Settle?

Each of the Defendants has denied and continues to deny each and every one of the claims and contentions alleged against him, her, or it by the Plaintiffs in the Actions. Each of the Defendants expressly has denied and continues to deny all allegations of wrongdoing, liability, or damages against him, her, or it, arising out of, based upon or related to any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Actions. Without

- 33 -

1361143_2

limiting the foregoing, each of the Individual Defendants has denied and continues to deny, among other things, that they breached their fiduciary duties or any other duty owed to comScore or its shareholders or engaged in any wrongdoing, or that Plaintiffs, comScore or its shareholders suffered any damage or were harmed as a result of any conduct that was or that could have been alleged against them in the Actions or otherwise. Further, comScore and the Individual Defendants have denied and continue to deny that the Plaintiffs have standing to pursue the Actions on behalf of the Company's shareholders.

Nonetheless, the Defendants also have taken into account the expense, uncertainty and risks inherent in any litigation, especially in complex cases like the Actions. comScore, through a majority of the Non-Defendant Members of comScore's Board, has approved the Settlement and each of its terms, including the Cash Payment, Corporate Governance Reforms, releases and the separately negotiated attorneys' fees and expenses, as set forth in the Stipulation, as in the best interest of comScore and its shareholders. Further, the Defendants have determined that it is desirable and beneficial that the Actions, and all of the Settling Parties' disputes related thereto, be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation.

**B.** **Why Did Plaintiffs Agree to Settle?**

Plaintiffs and Plaintiffs' Counsel believe that the claims asserted in the Actions have merit. However, Plaintiffs and Plaintiffs' Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Actions against the Individual Defendants through trial and appeals. Plaintiffs and Plaintiffs' Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Actions, as well as the difficulties and delays inherent in such litigation. Plaintiffs and Plaintiffs' Counsel

- 34 -

also are mindful of the inherent problems of proof of, and possible defenses to, the claims asserted in the Actions.  Plaintiffs also submit that the prosecution of the Actions and Settlement set forth in the Stipulation will result in comScore's recovery of $10 million in cash.  Additionally, Plaintiffs and Plaintiffs' Counsel believe that comScore will reap substantial benefits through the adoption of the Corporate Governance Reforms set forth in the Settlement, which will, among other things, insulate comScore for potential future liability for engaging in alleged improper related party transactions and/or revenue recognition practices, and enhance overall director responsiveness to not only shareholders but also to legal and regulatory compliance.  Based on their evaluation, Plaintiffs and Plaintiffs' Counsel have determined that the Settlement set forth in the Stipulation is in the best interests of comScore and its shareholders.

## VI.    SETTLEMENT HEARING

On _____, 2018, at _____ ___.m., the Court will hold the Settlement Hearing at 500 Pearl Street, Courtroom 12B, New York, New York 10007.  At the Settlement Hearing, the Court will consider whether the terms of the Settlement, including the separately negotiated Fee Award, are fair, reasonable and adequate and thus should be finally approved, and whether the Federal Action should be dismissed with prejudice pursuant to the Stipulation.

Pending determination of whether the Settlement should be approved, no comScore shareholder, either directly, representatively, derivatively or in any other capacity, shall commence or prosecute against any of the Released Persons, any action or proceeding in any court, administrative agency or other tribunal asserting any of the Released Claims.

## VII.   RIGHT TO ATTEND SETTLEMENT HEARING

Any comScore shareholder as of January 31, 2018, may, but is not required to, appear in person at the Settlement Hearing.  If you want to be heard at the Settlement Hearing, then you must first comply with the procedures for objecting, which are set forth below.  The Court has the

- 35 -

right to change the hearing date or time without further notice. Thus, if you are planning to attend the Settlement Hearing, you should confirm the date and time before going to the Court. ***COMSCORE SHAREHOLDERS AS OF JANUARY 31, 2018, WHO HAVE NO OBJECTION TO THE SETTLEMENT DO NOT NEED TO APPEAR AT THE SETTLEMENT HEARING OR TAKE ANY OTHER ACTION.***

## VIII.  RIGHT TO OBJECT TO THE PROPOSED DERIVATIVE SETTLEMENT AND PROCEDURES FOR DOING SO

Any comScore shareholder as of January 31, 2018, may appear and show cause, if he, she or it has any reason why the Settlement of the Actions should not be approved as fair, reasonable and adequate, or why a judgment should not be entered thereon, or why the separately negotiated attorneys' fees and expenses should not be approved. You must object in writing, and you may request to be heard at the Settlement Hearing. If you choose to object, then you must follow these procedures.

### A.     You Must Make Detailed Objections in Writing

Any objections must be presented in writing and must contain the following information:

1.      Your name, legal address, and telephone number;

2.      Proof of being a comScore shareholder as of the Record Date;

3.      The date(s) you acquired your comScore shares;

4.      A statement of your position with respect to the matters to be heard at the Settlement Hearing, including a statement of each objection being made;

5.      Notice of whether you intend to appear in person or by counsel at the Settlement Hearing (such an appearance is not required if you have lodged your written objection with the Court); and

- 36 -

6.     Copies of any papers you intend to submit to the Court, along with the names of

any witness(es) you intend to call to testify at the Settlement Hearing and the subject(s) of their

testimony.

The Court may not consider any objection that does not substantially comply with these

requirements.

## B.     You Must Timely Deliver Written Objections to the Court and Counsel for Plaintiffs, Individual Defendants and comScore

YOUR WRITTEN OBJECTIONS MUST BE ON FILE WITH THE CLERK OF THE

COURT NO LATER THAN _____, 2018. The Court Clerk's address is:

> Clerk of the Court
> United States District Court
> Southern District of New York
> 500 Pearl Street
> New York, NY 10007

YOU ALSO MUST DELIVER COPIES OF THE MATERIALS TO COUNSEL FOR

PLAINTIFFS, INDIVIDUAL DEFENDANTS AND COMSCORE SO THEY ARE RECEIVED

NO LATER THAN _____, 2018. Counsel's addresses are:

> *Counsel for Federal Plaintiffs:*
>
> Erik W. Luedeke
> ROBBINS GELLER RUDMAN
>   & DOWD LLP
> 655 West Broadway, Suite 1900
> San Diego, CA 92101
>
> *Counsel for State Plaintiffs:*
>
> Timothy W. Brown
> THE BROWN LAW FIRM, P.C.
> 240 Townsend Square
> Oyster Bay, NY 11771
>
> *Counsel for Nominal Defendant comScore, Inc.:*
>
> Michael J. McConnell

- 37 -

JONES DAY
1420 Peachtree Street, N.E., Suite 800
Atlanta, GA 30309

### *Counsel for Defendant Serge Matta:*

Christopher R. Conte
Jennifer Quinn-Barabanov
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036

### *Counsel for Defendant Patricia A. Gottesman:*

Irwin H. Warren
David P. Byeff
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153

### *Counsel for Defendant Melvin Wesley III:*

Michael P. Kelly
Douglas B. Paul
HOGAN LOVELLS LLP
555 Thirteenth Street, NW
Washington, DC 20004

### *Counsel for Defendant Christiana Lin:*

Elizabeth A. Scully
BAKER HOSTETLER
1050 Connecticut Avenue, NW, Suite 1100
Washington, DC 20036

### *Counsel for Defendant Joan Lewis:*

Mitchell Blair
CALFEE HALTER & GRISWOLD LLP
1405 East Sixth Street
Cleveland, OH 44114

David Bules
CALFEE HALTER & GRISWOLD LLP
2800 First Financial Center
255 East Fifth Street

- 38 -

Cincinnati, OH 45202

***Counsel for Defendants Gian Fulgoni, William Henderson, Ronald Korn, Russell Fradin, William Katz, William Engel, Brent Rosenthal, William Livek, David Chemerow, and Jeffrey Ganek:***

Jessica Perry Corley
Lisa R. Bugni
ALSTON & BIRD
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309

***Counsel for Defendant Magid Abraham:***

John S. Williams
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005

***Counsel for Defendant Kenneth Tarpey:***

Joanna C. Hendon
Jonathan C. Fayer
SPEARS & IMES LLP
51 Madison Avenue
New York, NY 10010

Unless the Court orders otherwise, your objection will not be considered unless it is timely filed with the Court and delivered to counsel for Plaintiffs, Individual Defendants and comScore.

Any Person or entity who fails to object or otherwise request to be heard in the manner prescribed above will be deemed to have waived the right to object to any aspect of the Settlement as incorporated in the Stipulation or otherwise request to be heard (including the right to appeal) and will be forever barred from raising such objection or request to be heard in this or any other action or proceeding, and, unless otherwise ordered by the Court, shall be bound by the District Court Approval Order and the Judgment to be entered and the releases to be given.

1361143_2

## IX.   HOW TO OBTAIN ADDITIONAL INFORMATION

This Notice summarizes the Stipulation. It is not a complete statement of the events of the Actions or of the terms of the Settlement contained in the Stipulation.

In addition to your being able to access, view, and download the Stipulation online (as described above), you may inspect all papers filed in the Federal Action at the United States District Clerk's office at any time during regular business hours of each business day. The Clerk's office is located at the United States District Court for the Southern District of New York, 500 Pearl Street, New York, NY 10007. However, you must appear in person to inspect these documents. The Clerk's office will not mail copies to you.

If you have any questions about matters in this Notice you may contact: (i) by telephone, 1-800-449-4900, or in writing, Rick Nelson, c/o Shareholder Relations, Robbins Geller Rudman & Dowd LLP, 655 West Broadway, Suite 1900, San Diego, CA 92101; and (ii) by telephone, 1-516-922-5427, or in writing, Timothy W. Brown, The Brown Law Firm, P.C., 240 Townsend Square, Oyster Bay, NY 11771.

PLEASE DO NOT CALL, WRITE, OR OTHERWISE DIRECT QUESTIONS TO EITHER THE COURT OR THE CLERK'S OFFICE.

DATED _____, 2018                    BY ORDER OF THE COURT
                                          UNITED STATES DISTRICT COURT
                                          SOUTHERN DISTRICT OF NEW YORK

- 40 -

## AMENDED EXHIBIT D

## CORPORATE GOVERNANCE REFORMS

### 1.    Annual Meeting

The Company shall use all commercially reasonable efforts to call and hold an annual meeting of stockholders as soon as practicable, in accordance with the rules and regulations of the SEC, and in no event later than the earlier of: (i) three months following the date it regains compliance with the financial reporting rules and regulations of the SEC; or (ii) June 30, 2018, provided, however, that if the Company is not in compliance with these financial reporting rules and regulations of the SEC by May 1, 2018, the Company agrees to seek an exemption pursuant to the guidance set forth in 13 C.F.R. Part 200, Release No. 34-57262 to hold the annual meeting notwithstanding its lack of compliance with these rules and regulations. In the event the exemption is granted, the Company will hold an annual meeting two months following its receipt of the exemption from the SEC.  If it is denied, the Company will hold the meeting within two months after it regains such compliance.

### 2.    Board Diversity

The Board shall adopt, and shall adhere to, a policy that promotes appropriate diversity among the members nominated for election to the board, taking into account such attributes that include gender, ethnicity and race, as are considered appropriate for good governance from time to time, including guidelines promoted by Institutional Shareholder Services Inc.  In developing this policy, the Nominating & Corporate Governance Committee shall evaluate the adoption of the "Rooney Rule" or similar provision and report its findings and conclusions to the Board of Directors by December 31, 2019.

### 3.    Internal Controls and Procedures

In the first Annual Report on Form 10- K filed with the SEC by the Company after the date of this settlement agreement, the Company shall disclose (a) its findings and conclusions regarding the effectiveness of its disclosure controls and procedures and internal control over financial reporting, (b) the material weaknesses in such internal controls that have been identified, and (c) the material changes or remediation actions that have been taken or that have been adopted and are in the process of being implemented with respect to such weaknesses, all in accordance with applicable accounting standards, SEC rules and regulations, and other applicable requirements.

### 4.    Enhanced Risk Oversight of the Company

The Company shall create a Compliance Coordinating Committee ("CCC") and amend the Audit Committee Charter appropriately in order to enhance the risk oversight responsibilities of the Audit Committee to enable the Audit Committee to effectively monitor the Company's compliance with public reporting requirements as well as internal risk assessment and internal reporting, and provide oversight of the Company's compliance with applicable laws and regulations, including those relating to public disclosures about the Company's business affairs, financial reporting and risk exposure. In addition, the Company shall maintain a designated Chief Compliance Officer (currently, Carol DiBattiste, Esq.) who shall be responsible for developing (with such independent outside advisors as necessary or appropriate) and implementing the Company's risk management and compliance programs and activities. The Chief Compliance Officer shall chair the Company's CCC, shall ensure that the Company's risk management and corporate compliance programs are reviewed and evaluated for effectiveness, and shall oversee the implementation of appropriate modifications and enhancements.

-2-

The CCC shall implement and oversee a compliance management system designed to ensure that all employees of comScore understand the importance of legal and regulatory compliance, including financial compliance. The CCC shall be chaired by the Chief Compliance Officer, report to the Company's Audit Committee through the Chief Compliance Officer, and meet on at least a quarterly basis. The CCC shall consist of comScore's Chief Executive Officer ("CEO"), Chief Financial Officer ("CFO"), Chief Operating Officer ("COO"), Chief Technology Officer, Chief Revenue Officer, Chief Accounting Officer, VP of Internal Audit and other executives, as necessary or appropriate. The responsibilities and duties of the CCC shall include, among other things, the following:

> (a)     Undertaking appropriate tasks assigned by the Board, Audit Committee, CEO or the Chief Compliance Officer;
>
> (b)     Accepting and approving compliance-related policies and procedures;
>
> (c)     Providing regulatory guidance to the Board through the Chief Compliance Officer or Vice President, Internal Audit;
>
> (d)     Monitoring key areas of compliance and relevant trends, and identifying, assessing and managing risk exposures of the Company, including the risks represented by failing to recognize the proper accounting treatment of nonmonetary transactions, the dissemination of false or misleading public statements by management, and the failure of management to timely disclose material information to the public.

The Audit Committee shall meet at least quarterly to review and assess the Company's risk compliance measures, and shall receive reports, at least quarterly, from the Company's Chief Compliance Officer. The Audit Committee shall report in to the full Board at least quarterly with

-3-

respect to any material risks identified regarding comScore's legal and regulatory compliance, and shall include specific recommendations regarding proposals for mitigating such risks, as well as relevant considerations relating to any necessary or appropriate disclosure by comScore of such risks. The Audit Committee shall conduct annual evaluations of the Chief Compliance Officer's performance and effectiveness. The Audit Committee shall also report to the Compensation Committee on an annual basis regarding the CEO's and CFO's contribution to comScore's culture of ethics and compliance and their effectiveness and dedication to ensuring the Company's compliance with applicable laws, rules, and regulations.

### 5.     Creation of Chief Compliance Officer Position

The Board shall maintain the designated position of Chief Compliance Officer, who shall report directly to the Chief Executive  Officer and the Chairman of the Audit Committee.  The duties of the Chief Compliance Officer shall include, but not be limited to, oversight and administration of comScore's compliance program, including corporate governance and compliance policies (including the Code of Business Conduct and Ethics), chairing the CCC, fostering a culture that integrates compliance and ethics into business processes and practices through educational  awareness and training, and maintaining accurate public and internal disclosures and reporting and investigating potential compliance and ethics concerns. The Chief Compliance Officer shall provide a formal report to the Audit Committee at least quarterly, and shall report promptly to that Committee any allegations of such lack of compliance or ethics concerns relating to financial fraud or reporting violations by corporate officers and/or directors. In the event of a finding by such officers or directors of a violation of SEC regulations, laws, or the Code of Business Conduct and Ethics, the Chief Compliance Officer shall report the violation in writing to the full Board. The Chief Compliance Officer shall provide a written annual report

1361152_2

to the Audit Committee that outlines the Company's compliance with applicable laws and regulations, including those relating to public disclosures about the Company's business affairs, financial reporting and risk exposure, and that identifies any reporting violations by corporate officers and/or directors.

comScore's Chief Compliance Officer shall be primarily responsible for developing, implementing and managing comScore's ethics and compliance program and for assisting the Board in fulfilling its oversight duties with regard to comScore's compliance with applicable laws, regulations and accounting standards, and the dissemination of true and accurate information. In this regard, the Chief Compliance Officer shall report to the Audit Committee of the Board, and work with other Board committees as necessary, to facilitate the Board's oversight responsibilities. The person who holds the Chief Compliance Officer position shall have appropriate executive-level experience in risk mitigation, legal-regulatory compliance and public disclosures. The responsibilities and duties of comScore's Chief Compliance Officer shall include the following:

> (a)  Working with the Audit Committee to evaluate and define the goals of comScore's ethics and compliance program in light of trends and changes in laws which may affect comScore's compliance with laws relating to disclosure of the Company's risk exposure;
>
> (b)  Managing and overseeing comScore's ethics and compliance program, including creation of a policy and procedures library, education and training on the compliance program and key policies, implementing procedures for monitoring and evaluating the program's performance, and communicating with and informing the Board regarding progress towards meeting program goals;

-5-

(c)     Advising comScore's Audit Committee and acting as the liaison between the executive officers, the Audit Committee and the full Board, in which capacity the Chief Compliance Officer shall: (i) be primarily responsible for assessing organizational risk for misconduct and noncompliance with applicable laws and regulations; (ii) report material risks relating to compliance or disclosure issues to the Audit Committee within 5 business days of identification of those risks; and (iii) make written recommendations for further evaluation and/or remedial action within deadlines established by the Audit Committee;

(d)     Preparing annual written reports to the Audit Committee and oral quarterly briefings assessing compliance and, where necessary, recommending remedial action, and reporting on an annual basis to the Audit Committee regarding the CEO's and CFO's contributions to comScore's culture of ethics and compliance;

(e)     On an as-needed basis, employing an independent third-party consultant and/or service to assist in the assessment of internal risk;

(f)     Working with the VP of Internal Audit and the Audit Committee to ensure that the Company maintains an appropriate level of staffing and expertise within the Internal Audit department, to evaluate the adequacy of comScore's internal controls relating to compliance, and to develop proposals for improving those controls and the internal audit process. This includes meeting with the Audit Committee at least quarterly to discuss ongoing and potential litigation and compliance issues;

-6-

(g)     Overseeing and reviewing comScore's marketing materials including, without limitation, postings on comScore's website, to ensure that they report accurate and current information; and

(h)     Performing an independent review of comScore's draft quarterly and annual reports filed with the SEC on Forms 10-Q and 10-K, and related materials prior to their publication to provide oversight regarding (i) the accuracy, completeness and timeliness of disclosures relating to risk exposure from the Company's recognition of nonmonetary transactions, general accounting shortfalls and weak internal controls, (ii) the identification and disclosures of any material risk to comScore's compliance with applicable laws and regulations, and (iii) accurate reporting of any material issues that may merit disclosure to comScore's Audit Committee;

(i)     Reviewing and approving comScore's press releases related to financial information reports and results, and related materials prior to their publication to provide oversight regarding the accuracy, completeness, and timeliness of disclosures relating to accounting matters, and any material risks to comScore's compliance with applicable laws and regulations, and reporting any material issues that may merit disclosure to comScore's Audit Committee; and

(j)     Implementing and overseeing employee training in risk assessment and compliance.

-7-

## 6.     Improvements to the Audit Committee

The Board shall adopt an updated Charter of the Audit Committee that includes provisions, or shall otherwise provide, that:

(a)     The Audit Committee shall obtain input from management representatives as necessary to review the accuracy of public disclosures, including, with respect to: (i) accounting policies, including the recognition and calculation of any nonmonetary transactions; (ii) operations, enterprise risks, and compliance matters that may have a material impact on the Company's operational performance, financial health, balance of risk, stability, and liquidity, and (iii) any other material matters required to be disclosed under state and federal securities laws and regulations;

(b)     All Company employees shall be required to cooperate with Audit Committee investigations, including, but not limited to, producing all requested documents and participating in interviews.   Any failure to cooperate shall be grounds for discipline by the Board, including, but not limited to, termination for cause, in the sole discretion of the Board.  This applies to all Company employees, including, but not limited to, the CEO and CFO;

(c)     In its oversight capacity, the Audit Committee shall have the responsibility to ensure that the Company (*i.e.*, management) implements and maintains internal controls over accounting and financial reporting and reporting systems and procedures designed to identify instances of fraud and to ensure

the integrity, accuracy, completeness, and timeliness of the Company's financial statements and related public filings and disclosures;

(d)     The Audit Committee shall receive quarterly reports from the Company's Chief Compliance Officer in order to assist the Audit Committee with its oversight responsibilities, including monitoring the Company's compliance with public reporting requirements as well as internal risk assessment and internal reporting, and its oversight of the Company's compliance with applicable laws and regulations, including those relating to public disclosures about the Company's business affairs, financial reporting and risk exposure;

(e)     The Audit Committee shall receive annually a report listing all trades in comScore securities engaged in by Section 16 officers;

(f)     At least annually, the Committee shall: (i) evaluate the qualifications, performance and independence of the Company's independent auditors, including an evaluation of the lead audit partner; (ii) assure the regular rotation of the lead audit partner at the Company's independent auditors; and (iii) consider regular rotation of the accounting firm serving as the Company's independent auditors.  The Audit Committee shall actively engage in a dialogue with the auditors with respect to any disclosed relationship or services that may impact the objectivity and independence of the auditors and should take, or recommend that the Board take, appropriate action to oversee the independence of the auditor;

(g)     The Audit Committee shall also report to the Compensation Committee on an annual basis regarding the CEO's and CFO's contribution to comScore's culture of ethics and compliance and their effectiveness and dedication to ensuring the Company's compliance with applicable laws, rules, and regulations; and

(h)     The Company shall post the amended Charter of the Audit Committee on its website.

**7.     Nominating & Corporate Governance Committee**

The Board shall adopt an updated Charter of the Nominating & Corporate Governance Committee that includes the following provisions:

(a)     The Committee shall consist of at least three members, which members shall be appointed no later than six months after the final approval of the settlement in all of the Actions;

(b)     The requirement that, on at least an annual basis and periodically as necessary, the Committee review and make recommendations to the Board regarding the skills, qualifications and experience required of directors and candidates to become directors.     The Committee's recommended qualifications should emphasize a candidate's judgment, skill, integrity, experience with businesses and other organizations of comparable size or industry, the interplay of the candidate's experience with the experience of other directors, the extent to which the candidate would be a desirable addition to the Board and any committees of the Board and any other factors

-10-

that the Committee deems relevant to the current needs of the Board, including those that promote diversity;

(c)    The Committee shall identify, screen and interview in person (or by appropriate video or teleconferencing technology) individuals qualified to become directors, consistent with criteria approved by the Board, and in consultation with independent corporate governance advisors to the extent appropriate.  The Committee shall consider any director candidates recommended by the Company's stockholders pursuant to the procedures set forth in the Company's Bylaws and described in the Company's proxy statement from time to time.  The Committee shall also evaluate incumbent directors who are expected to stand for reelection upon the expiration of each director's term, and final approval of any director candidate shall be determined by the full Board; and

(d)    the Company shall post the amended Committee Charter, as well as the Company's Corporate Governance Guidelines, on its website.

**8.**    **Related Party Transactions Policy**

The Board shall adopt the Related Party Transactions Policy, to become effective no later than March 31, 2018.  The Company shall make such policy available to the public and all employees, including by posting it on the Company's internal website.

**Policy**

(a)    The Board recognizes that certain transactions present a heightened risk of conflicts of interest or the perception thereof.  The Board has determined that the Audit Committee of the Board (the "Committee") is best suited to review all Related Party Transactions, which are limited

-11-

to those described in this Policy, and that such transactions shall be subject to the approval or ratification by the Committee in accordance with this Policy and the Committee's charter.

**Definition**

(b)     A "Related Party Transaction" is any transaction directly or indirectly involving any Related Party that would need to be disclosed under Item 404(a) of the SEC's Regulation S-K. Under Item 404(a), the Company is required to disclose any transaction occurring since the beginning of the registrant's last completed fiscal year, or any currently proposed transaction, involving the Company where the amount involved exceeds $120,000, and in which any Related Party had or will have a direct or indirect material interest. "Related Party Transaction" also includes any material amendment or modification to an existing Related Party Transaction.

"Related Party" means any of the following:

•       a director (which term when used herein includes any director nominee),

•       an executive officer (which term when used herein includes any member of "management" as defined by ASC 850),

•       a person known by the Company to be a shareholder who owns any securities with respect to which he or she, directly or indirectly, has sole or shared (i) voting power and/or (ii) investment power, in excess of 5% of any class of the Company's securities, or

•       a person known by the Company to be an immediate family member of any of the foregoing.

"Immediate family member" means a child, stepchild, parent, stepparent, spouse, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law of such director, executive officer, nominee for director or beneficial owner; any other family member

-12-

who exercises control or significant influence over, or who might be controlled or significantly influenced by, such director, executive officer, nominee for director or beneficial owner because of the family relationship; and any person (other than a tenant or employee) sharing the household of such director, executive officer, nominee for director or beneficial owner.

**Approval Procedures**

(c)     Prior to entering into a Related Party Transaction, the Committee shall review the material facts of the Related Party Transaction and either approve or disapprove of the entry into the Related Party Transaction, subject to the exceptions described below.  If advance Committee approval of a Related Party Transaction is not feasible, then the Related Party Transaction shall be considered and ratified (if the Committee determines it to be appropriate) at the Committee's next regularly scheduled meeting.  In determining whether to approve or ratify a Related Party Transaction, the Committee will take into account factors it deems appropriate, including, but not limited to:

- the Related Party's direct or indirect interest in the Related Party Transaction;
- the approximate dollar value of the amount involved in the Related Party Transaction;
- the approximate dollar value of the amount of the Related Party's direct or indirect interest in the transaction without regard to the amount of any profit or loss;
- whether the transaction was undertaken in the ordinary course of business of the Company;
- whether the transaction with the Related Party is proposed to be, or was entered into on terms no less favorable to the Company than terms that could have been reached with an unrelated third party;

-13-

- whether any alternative transactions or sources for comparable services or products are available;

- the purpose of, and the potential benefits, or potential risks or costs, to the Company of, the Related Party Transaction;

- whether the Related Party Transaction is in the best interests of the Company;

- required public disclosure, if any;

- whether the Related Party Transaction presents an improper conflict of interest for any comScore officer or director;

- the impact on a director's independence in the event the Related Party is a director, an immediate family member of a director or an entity in which a director is a partner, shareholder or executive officer; and

- any other information regarding the Related Party Transaction or the Related Party in the context of the proposed transaction that would be material to investors in light of the circumstances of the particular transaction.

(d)     The Committee has reviewed the Related Party Transactions described below and determined that each of the Related Party Transactions described therein shall be deemed to be pre-approved or ratified (as applicable) by the Committee under the terms of this Policy.   In connection with each regularly scheduled meeting of the Committee, a summary of each new Related Party Transaction deemed pre-approved as described below shall be provided to the Committee for its review.

(e)     No director shall participate in any discussion or approval of a Related Party Transaction for which he or she is a Related Party, except that the director shall provide all material information concerning the Related Party Transaction to the Committee.

-14-

(f)    Approval of a Related Party Transaction shall be obtained through approval by a majority of the Audit Committee's members, none of whom is a Related Party in regard to the Related Party Transaction under consideration, with respect to the Related Party Transaction under consideration, except that, if the transaction with the Related Party is proposed to be, or was, entered into on terms less favorable to the Company than terms that could have been reached with an unrelated third party, approval of the Related Party Transaction shall be obtained by unanimous approval of the disinterested members of the Board.

(g)    A Related Party Transaction shall not be approved if such Related Party Transaction (i) would render a director no longer independent and (ii) would cause less than a majority of the Board to meet the Company's director independence requirements.

(h)    If a Related Party Transaction will be ongoing, the Committee may establish guidelines for the Company's management team to follow in its ongoing dealings with the Related Party. Thereafter, the Committee, on at least an annual basis, should review and assess ongoing relationships with the Related Party to confirm that they are in compliance with the Committee's guidelines and that the Related Party Transaction remains appropriate. In addition, the Committee should review and assess, on at least a quarterly basis, any transactions that require disclosure under ASC 850 but that do not constitute Related-Party Transactions under this Policy.

**Standing Pre-Approval for Certain Related Party Transactions**

(i)    The Committee has reviewed the types of Related Party Transactions described below and determined that each of the following shall be deemed to be pre-approved by the Committee, even if the aggregate amount involved will exceed $120,000, unless otherwise specifically determined by the Committee.

-15-

- **Employment of executive officers.** Any employment by the Company of an executive officer of the Company or any of its subsidiaries if the related compensation is approved (or recommended to the Board of Directors for approval) by the Company's Compensation Committee;

- **Director compensation.** Any compensation paid to a director for service as a director if such compensation is approved (or recommended to the Board of Directors for approval) by the Company's Compensation Committee;

- **Certain transactions with other companies.** Any transaction with another company at which a Related Party's only relationship is as an employee (other than an executive officer or director) or beneficial owner of less than five percent of that company's equity securities;

- **Substantially comparable transactions with the same party.** Any transaction substantially comparable to a previously Committee-approved transaction with the same party entered in the ordinary course of business, on terms no less favorable to the Company than terms that could have been reached with an unrelated third party on a negotiated, arm's-length basis, *provided* that any transactions with Exempt Companies (defined below) shall require approval. Simultaneously with the execution of this provision, the Settling Parties (as defined in the Stipulation of Settlement) are executing a Confidential Agreement identifying the Exempt Companies for which approval shall be required. The Confidential Agreement will not be filed with the Court unless and until a dispute arises between the Settling Parties with respect to its terms or application. In that event, the Settling Parties will request that the Confidential Agreement be filed with and maintained by the

-16-

Court under seal. If required by the Court, the Confidential Agreement or any of its terms may be disclosed to the Court in camera, but this disclosure must be carried out to the fullest extent possible in accordance with the practices of the Court so as to preserve the confidentiality of the Confidential Agreement, particularly the identities of the Exempt Companies;

- **Transactions where all shareholders receive proportional benefits.** Any transactions, arrangements or relationships where the Related Party's interest arises solely from the ownership of the Company's common stock and all holders of the Company's common stock received the same benefit on a pro rata basis (*e.g.*, dividends or stock splits);

- **Regulated transactions.** Any transactions, arrangements or relationships with a Related Party involving the rendering of services as a common or contract carrier, or public utility, at rates or charges fixed in conformity with law or governmental authority; and

- **Certain banking-related services.** Any transactions, arrangements or relationships with a Related Party involving services as a bank depositary of funds, transfer agent, registrar, trustee under a trust indenture, or similar services.

(j)     A Related Party Transaction entered into without pre-approval of the Committee shall not be deemed to violate this Policy, or be invalid or unenforceable, so long as the transaction is brought to the Committee and ratified as promptly as reasonably practical after it is entered into or after it becomes reasonably apparent that the transaction is covered by this policy. To the extent that the Committee does not ratify or approve such transaction, the transaction shall be rescinded as soon as reasonably practicable. Any Related Party Transactions that are not entered in

-17-

accordance with this Policy and for which the Committee later fails to ratify or rescind shall be publicly disclosed to stockholders in its next periodic report filed with the Securities and Exchange Commission.

(k)     All Board members shall submit to the General Counsel an up-to-date list of companies in which they are a director, an officer, and/or of which they own a controlling interest, and to promptly update the list when any changes occur.

## 9.     Board Composition and Practices

The Board shall adopt Corporate Governance Guidelines that include, or otherwise adopt and implement, the following provisions:

- Specify that the roles of Chairman of the Board and CEO should generally not be held by the same individual, but that if those positions are combined, or if the Chairman is not an "independent" director, then the independent members of the Board shall select one independent director to serve as the Lead Independent Director, who shall act as liaison with the Chairman and shall be given specific duties, including approving agendas for meetings, meeting schedules, calling meetings of the independent directors, guiding Board evaluations, guiding Board considerations of CEO compensation, and guiding the CEO succession planning process;

- Directors of the Company who simultaneously serve as executive officers of the Company may not serve on the board of directors of more than one other public company, and other directors may not serve on the boards of more than three other public companies, in each case unless approved by the Board;

-18-

1361152_2

- The Board's standing committees shall have standing authorization, at their discretion, to engage legal counsel or other advisors of their choice, who shall report directly to the Board or such committee; and

- The Nominating & Corporate Governance Committee, in coordination with the Chief Compliance Officer and General Counsel, shall develop and implement ongoing annual director education programs for the members of the Board, which shall include provisions for the Chairman of the Board and the chairs of each standing committee of the Board to attend, at least once every three years, a director education program sponsored by the Stanford Law School Directors College, the Vanderbilt Directors College, the National Association of Corporate Directors or similar programs.

## 10. Clawback Policy

To the extent permitted by law, if the Board, or a committee thereof, determines that any bonus, incentive payment, equity award or other compensation has been awarded or received by an executive officer of the Company, and that such compensation was based on any financial results or operating metrics that were satisfied as a result of such officer's knowing or intentional fraudulent or illegal conduct, then the Board, or such committee thereof, shall take appropriate actions to recover from the officer such compensation (in whole or in part). Further, in the event of a restatement of the Company's financial statements (other than due to a change in accounting policies or principles), the Company shall seek to recover any compensation received by the CEO and CFO that is required to be recovered under Section 304 of Sarbanes-Oxley Act of 2002. In the event of any such clawback, the Company shall, to the extent permitted, publicly disclose the

-19-

amounts and circumstances in its next annual meeting proxy statement or other filing with the SEC.

## 11. Compensation Committee

The Board shall adopt an updated Charter of the Compensation Committee, which shall include the following provisions:

> (a)     the Compensation Committee shall consist of at least three members, which members shall be appointed no later than six months after the final approval of the settlement in all of the Actions;
>
> (b)     in considering any compensation or severance arrangements or plans with executive officers, the Compensation Committee shall consider, among other factors in evaluating the particular officer's performance, his/her compliance with legal and regulatory requirements and internal policies and procedures, and in any severance arrangements, the circumstances surrounding such officer's departure; and
>
> (c)     the Company shall post the amended Compensation Committee Charter on its website.

## 12. Ban on Certain Stock Repurchases

The Board shall prohibit the Company from repurchasing Company stock from executive officers other than in accordance with applicable rules and regulations of the SEC.

## 13. SEC Filings

The Company shall devote necessary and appropriate resources, including its principal financial officer and principal accounting officer, Audit Committee, and independent public accountants, to complete the pending restatements and regain compliance with the Company's

-20-

periodic reporting requirements under the rules and regulations of the SEC, as soon as practicable. Going forward, the Company shall carefully consider and assess Company policies and procedures in order to enable the Company to be as transparent as possible in its public disclosures and to avoid untimely filings in the future.

## 14. Amendments to Company Separation Agreements

The Company, working through the Compensation Committee, shall amend its form of Change of Control and Severance Agreement (the "COCS Agreement") for all agreements entered into after January 31, 2018, to prohibit a finding of termination for "Good Reason" where (i) the executive's conduct is such that his or her compensation is subject to clawback provisions under any policy or agreement of the Company, or pursuant to applicable law, statute, rule or regulation of any branch of the federal government or (ii) where either of the events described in Sections 6(e)(i) and (ii) of the COCS Agreement is caused by the intentional or reckless conduct of the executive himself/herself.

## 15. Attendance at Annual Meetings of Stockholders

Absent extraordinary circumstances, each member of the Board shall be expected to attend each annual stockholders' meeting in person, and at such meeting stockholders shall have the right to ask questions, both orally and in writing, and receive answers from and engage in discussion with the CEO and members of the Board.

## 16. Ban on Stock Pledges/Hedging

The Board shall adopt a policy on stock hedging and/or pledging that prohibits a director from hedging and/or pledging any of the equity securities of the Company in a margin or similar loan transaction and shall include disclosure of such policy on the Company's website.

-21-

1361152_2

### 17.    Stock Ownership Guidelines

The Board shall adopt a policy regarding stock ownership guidelines for the CEO, CFO, COO and such other executive officers as the Board shall determine, which shall provide:

- that such officer shall be required to maintain minimum stockholdings, (including restricted shares, restricted stock units and shares underlying options) up until his/her employment by the Company ends, equal to at least: (i) CEO - 5 times base salary, (ii) CFO - 3 times base salary, and (iii) COO and other officers - 2 times base salary;

- the time period for compliance shall be 5 years after the later of adoption of the policy or the date of assuming such officer position; and

- the Company shall disclose in its annual proxy statement when an individual falls out of compliance or regains compliance.

### 18.    Policy on Lobbying and Political Contributions

The Board shall adopt a policy that limits the use of corporate funds and other assets for governmental lobbying and political campaigns as follows:

The Nominating and Corporate Governance Committee shall have oversight over lobbying and political activities conducted by the Company, and any such activities shall be conducted for the purpose of promoting the commercial interests of the Company as a whole, be in furtherance of the interests of its stockholders, and be in compliance with applicable laws, rules and regulations as in effect from time to time.  Any such activities shall not be intended to promote narrow political preferences of the Company's executives that have little or no bearing on the Company's own commercial performance or activities.

To ensure that any political activities by comScore are transparent to comScore shareholders, the Company shall post to its website, and update, on a quarterly basis, contributions made by the Company, any federal political action committee established by the Company, and by any state or local political action committees established by the Company, including recipient's name and amounts given.

### 19.     Whistleblowers

The Board shall review the Reporting and Non-Retaliation Policy, most recently updated in April 2017, on an annual basis and ensure the Company provides annual training of employees with respect to such policy. The Company shall maintain a written policy that enables interested parties to report ethical or legal violations, and protects such parties from retaliation, and shall post such policy, as in effect from time to time, on the Company's internal website for employees. The policy shall include provisions that:

> (a)     encourage interested parties to bring forward appropriate ethical and legal violations, and/or a reasonable belief that such violations have occurred, to the Audit Committee and the Chief Compliance Officer so that action may be taken  to resolve the issue, and who will handle the complaints anonymously and in confidence  to the extent permitted  by applicable  law;
>
> (b)     communicate that the Company is serious about adherence to its conduct and compliance procedures;
>
> (c)     if a party brings his or her complaint to an outside regulator or other governmental entity, he or she will be protected under the terms of the policy as if the complaint was directed to the Audit Committee Chair and/or Chief Compliance Officer;

-23-

(d)     disclose that individuals are subject to criminal penalties, including imprisonment, for retaliation against whistleblowers;

(e)     specify that it is both illegal and against the Company's policy to discharge, demote, suspend, threaten, intimidate, harass or in any manner retaliate against whistleblowers; and

(f)     specify that the Company shall remind employees of the whistleblower provisions and protections in employee communications provided at least annually and through the Company's internal website.

## 20.     Executive Reports

At regularly scheduled quarterly Board meetings, the principal executive officer, principal financial officer and any other executive officer who oversees a principal business unit or function within the Company, shall report to, or otherwise be available to update, the Board on material developments in their respective areas of responsibility, including, but not limited to, identifying risks represented by failing to recognize the proper accounting treatment of nonmonetary transactions, the dissemination of false and misleading public statements by management, or the failure of management to timely disclose material information to the public. These reporting officers shall be available to meet with non-employee directors of the Company from time to time.

-24-